(108 App. Div. 209.)

PINSDORF v. E. L. KELLOGG & CO.

(Supreme Court, Appellate Division, First Department.   November 10, 1905.)

MASTER AND SERVANT—FELLOW SERVANTS—DUTY OF MASTER.

Labor Law, Laws 1897, p. 480, c. 415, § 81, provides that all machinery shall be properly guarded, and that when guards are taken off in order to make repairs they shall be promptly replaced. *Held*, that where the foreman of a printing shop took a guard rail off a press, and failed to replace it, whereby, a press feeder was injured, the negligence of the foreman was that of the master, and not that of a fellow servant.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 385, 390, 394.]

McLaughlin and Patterson, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Charles Pinsdorf, by his guardian ad litem, against E. L. Kellogg & Company.   From a judgment dismissing the complaint, plaintiff appeals.   Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Gilbert R. Call, for appellant.

Wm. L. Stone, Jr., for respondent.

INGRAHAM, J.   The plaintiff, 17 years of age, had been in the employ of the defendant for 2½ years prior to Friday, the 13th day of

December, 1901; his duty being to supply the defendant's presses with paper. On that day he left the defendant's place of business, about 2 o'clock to go to St. Vincent's Hospital to have an injured finger dressed, returning to his employer's place of business about half past 3 o'clock. After his return he was requested to get some paper to be used on the presses at work for the defendant. It seems that this paper was kept on a platform or loft, access to which was obtained either by climbing upon one of the presses or by a ladder. During the week before the accident the way to this loft or platform by the ladder had been blocked by bags that were placed there, so that the only method of getting the paper was to climb upon one of the presses, whereupon the plaintiff climbed up on a press. The machinery upon this press was usually protected by a guard rail. There was no light, and the plaintiff's foot was caught in the machinery, and he was severely injured. The machinery in the defendant's factory seems to have been in charge of a foreman named Ire, who employed and discharged the workmen and had charge of the machinery and premises. The plaintiff testified that on former occasions, when he tried to get paper and found the way by the ladder blocked, this foreman had told him to go up on the press; that he had been in the habit of going on the press to get this paper, and that the foreman had been present when he did so; that when the plaintiff climbed up on it he saw that it was in motion; that the guard rail was there for the purpose of preventing anything from getting into the bed of the press, or being injured by it; that the witness saw that this rail was on the press before he left to go to the hospital; that prior to the accident, when he had gone up on this press to get paper, he had placed his foot on the top of the guard rail, and he could do that without danger of injury if the guard rail was there; that no one called his attention to the fact that this guard rail had been removed, and he had no knowledge of it. Upon cross-examination the plaintiff testified that the foreman had told him two or three times to go to this platform where the paper was kept by stepping on the presses; that the foreman never warned him not to go by the way of the presses, and never told him that it was dangerous, that as he was putting his foot on the step to get on the press he noticed that an electric light was turned out; that this light had been always lighted when the guard rail was removed; that this guard rail was only removed when the machinery was being repaired; that when the machine was stopped for the purpose of making repairs the light would be lighted, but when the machine was started up the light would be turned out; that the machine was perfectly safe with the guard rail on; that it was the custom of the business to get this paper by climbing up upon this machine when the way by the ladder was blocked, and all the feeders and the foreman himself went up the same way; and that the other machine by which the plaintiff would get to this loft was also in motion at the time of the accident. It also appeared that at the time this accident happened the foreman was in the room about 10 or 15 feet away from the press; that some time prior to the accident the workmen in charge of this press upon which the plaintiff was injured called the attention of the foreman to the fact that the register rack on the press was out of order, and that the

foreman came over, removed the guard and fixed the rack, went away without replacing the guard, leaving it on the floor, and told the workman to try the press, and the man went on and pushed it out at top speed; that this guard was removed after 1 o'clock, and was off about two hours prior to the accident; that it took about 20 minutes to fix the press, and during that time the light was turned on; and that at this end of the basement it was quite dark, so that without light it was impossible to see whether the guard rail was on or not. At the end of the plaintiff's testimony the complaint was dismissed, upon the ground that the act of the foreman in removing the guard was the act of a fellow servant of the plaintiff, for which the defendant was not liable.

Section 81 of the labor law (chapter 415, p. 480, Laws 1897) provides that:

"All vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws and machinery of every description, shall be properly guarded. No person shall remove or make ineffective any safeguard around or attached to machinery, vats or pans, while the same are in use, unless for the purpose of immediately making repairs thereto, and all such safeguards so removed shall be promptly replaced."

This statute imposes a duty upon the employer—a duty which he cannot evade by employing foremen or overseers to take his place, in charge of machinery upon which his employés are at work. Generally it is the master's duty to furnish his employés with a safe place to work and with proper and safe appliances for doing the work; and the statute having expressly provided that the machinery shall be guarded, and that guards, when removed, shall be promptly replaced, there is imposed an affirmative duty upon the employer, a violation of which is evidence of negligence. As was said by the Court of Appeals in Glens Falls P. Co. v. Travellers' Ins. Co., 162 N. Y. 403, 56 N. E. 899:

"The manifest purpose of the enactment was doubtless to give more force to the existing rule that masters should afford a reasonably safe place in which their servants are called upon to work."

This duty devolving upon the master, and he having provided a foreman and placed him in charge of the machinery, a violation of the duty by the foreman would, I think, be clearly a violation of the duty of the master. In Koehler v. New York Steam Co. (decided October 24, 1905) 75 N. E. 538, the Court of Appeals held that the duty of inspection is the master's duty, and one that cannot be delegated, so as to relieve him from responsibility, and that if a servant performs this duty he is the alter ego of the master, and for any negligence in its discharge the latter is liable. The same principle would apply to the duty imposed by the provision of the labor law to which attention has been called. In the performance of his duty the foreman removed this guard rail from this machine to repair the machine. He repaired the machine and directed the persons in charge of it to proceed with their work without replacing the guard; and there is evidence that the machine in this condition was left unguarded for a considerable period of time. A failure to promptly replace this guard was the immediate and proximate cause of the accident, and this failure to replace this guard was a violation of the obligation imposed by the statute upon the master,

and for the negligence of his foreman in performing this duty the master was liable.

Klein v. Garvey, 94 App. Div. 183, 87 N. Y. Supp. 998, I think is an authority for this view. In that case the Presiding Justice, speaking for this court, after calling attention to section 81 of the labor law, said:

"The proper guard was provided for use on this machine, and its use was dispensed with pursuant to the instructions of the defendant, if we are to believe the plaintiff's evidence. * * * It was the duty of the defendant, not only not to direct the use of the machine without its being properly guarded, but to forbid its use in such a condition."

I do not think that Vogel v. American Bridge Co., 180 N. Y. 373, 73 N. E. 1, is at all decisive of this question. In that case the accident was not caused by a failure of the defendant to perform a duty imposed upon it, but was caused by the breaking of a rope with which the employés, including the plaintiff, were shifting a large iron truss. The foreman there expressed his opinion that this particular rope was strong enough—an opinion which was characterized by the Court of Appeals as "error of judgment." In that case it was said:

"In all the cases where the question of the master's liability in this form has arisen, it is made to depend upon whether the act omitted or neglectfully performed by the alter ego, was one which might be regarded as within the personal duty of the master, or whether it was some act in the line of a mere servant's duty. If, in the exercise of judgment by the master's representative, he omits to do something which has been foreseen and provided against by the master, the latter should not be regarded as chargeable with a responsibility for the result."

The distinction here is that, when the master has performed his duty to the servant, an act of an employé, no matter what his rank, is the act of a fellow servant; but, when the negligence is in the performance of a duty imposed upon the master by one employed by the master, the master is liable for such negligence when it causes an injury to one of his employés. In other words, a master cannot escape liability for the neglect of a duty which the law imposes upon him by providing a servant to perform that duty. The two late decisions of the Court of Appeals in Vogel v. American Bridge Co., supra, and Koehler v. N. Y. Steam Co., supra, illustrate this distinction.

Here, as I view it, the accident was caused by a failure of the master's representative to comply with this provision of the statute, which imposes a duty upon the master to promptly replace this guard rail, and it was a failure to perform the master's duty in that respect which has resulted in this injury, and for that negligence, I think, the master is responsible.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, P. J., and LAUGHLIN, J., concur. PATTERSON, J., dissents.

McLAUGHLIN, J. I dissent upon the ground that this case cannot be distinguished in principle from Vogel v. American Bridge Co., 180 N. Y. 373, 73 N. E. 1.