POCKRASS v. KAPLAN.

(Supreme Court, Appellate Division, Second Department... January 17, 1913.)

1. MASTER AND SERVANT (§ 121*)—INJURIES TO SERVANT—DANGEROUS MACHINERY—GUARDS—DUTY TO REPLACE.

Where a statutory guard had been removed from a circular saw by an employé because its presence was impracticable for a particular kind of work, the master was under an absolute duty to promptly replace the guard on the finishing of the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228-231; Dec. Dig. § 121.*]

2. MASTER AND SERVANT (§ 126*)—INJURIES TO SERVANT—DANGEROUS MACHINERY—GUARDS.

Where a statutory guard over a circular saw had been removed by a servant without the direction or knowledge of the superintendent or foreman, the master was entitled to a reasonable time in which to discover the absence of the guard by inspection, and cause it to be replaced, before he would be liable for injuries resulting from its absence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 253; Dec. Dig. § 126.*]

3. MASTER AND SERVANT (§ 125* )—INJURIES TO SERVANT—DANGEROUS APPLIANCES—GUARDS—DUTY TO REPLACE—TIME—INSTRUCTIONS.

Plaintiff received injuries from which he died by being struck by a piece of lumber thrown from a circular saw from which a statutory guard had been removed by a coemployé without the knowledge of defendant's superintendent or foreman about one-half hour before the accident. *Held*, that defendant was entitled to an instruction that the absence of the guard for one-half hour was not an absence for such length of time as would necessarily charge defendant with notice that the guard was not being used on the machine, so as to charge defendant with liability for failure to cause the guard to be replaced within a reasonable time.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243-251; Dec. Dig. § 125.*]

Appeal from Trial Term, Kings County.

Action by Annie Pockrass against Louis Kaplan. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

E. Clyde Sherwood, of New York City (Joseph F. Murray, of New York City, on the brief), for appellant.

Thomas J. O'Neill, of New York City (L. F. Fish, of New York City, on the brief), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CARR, J.  The plaintiff has recovered a judgment against the defendant for damages resulting from the death of her decedent, through the alleged negligence of the defendant, and from this judgment the defendant appeals.

There is but little dispute as to the main facts of the case, and the arguments on this appeal by the appellant are confined principally to questions of law.  On March 24, 1910, the decedent, Jacob Pockrass, was at work in the employment of the defendant in a cabinet-making shop in the borough of Brooklyn.  While so at work, he was located some 18 or 20 feet away from a bench on which was being operated a circular saw that protruded for several inches above the level of the bench.  This saw was operated by steam, and its speed was about 2,200 revolutions a minute.  Another employé of the defendant, one Padone, was engaged at the saw bench, ripping a plank into narrow strips.  While so engaged, Padone lifted up one of the strips which had been ripped from the plank, in order to place it on a pile of strips near by.  This particular strip fell from his hand, and struck the top of the revolving saw.  The speed of the revolution of the saw caused it to be hurled in the air with great force, and to come in contact with body of Pockrass, causing him such a severe injury that he was thrown from his feet, and died in a few minutes thereafter.

The plaintiff claimed that the defendant was negligent in two particulars, either or both of which caused the injury to the decedent.  One of these claims was to the effect that Padone was a physically incompetent servant, and that the defendant had notice of such incompetence, and was thereby guilty of negligence in continuing him in his employment.  The other claim was that the circular saw in question was not properly guarded within the requirements of section 81 of the Labor Law, and that through the failure to so guard said saw the strip of wood in question was permitted to come in contact with its top as it revolved, and thus to receive such force of propulsion as to cause the injury and death of Pockrass.  There is no question in the case that at the time of the accident there was no guard on or about the revolving circular saw, and that the narrow strip of wood did fall from the hand of Padone and come in contact with the saw, and was thus hurled through the air so violently as to strike Pockrass, who, as before stated, stood a considerable distance away from the saw table.

The case was submitted to the jury on the theory that, if it found that Padone was physically incompetent for the work in question to the knowledge actual or imputable of the defendant, and such incompetency caused the accident in question, then a verdict might be rendered in favor of the plaintiff.  It was likewise charged that if the circular saw was at the time of the accident unguarded, and that by reason of the lack of such guard the accident in question was caused wholly or partly, then a verdict might be rendered against the defendant, if the proofs disclosed a lack of reasonable care on the part of the defendant in permitting the saw to be used without a guard.  It appeared from the proofs that the defendant had furnished a guard for use on this circular saw, which, if it had been employed at the time

of the accident, would have been sufficient to prevent the falling strip of wood from coming in contact with the top of the saw, but which had been removed from the saw about one-half an hour before the accident by one Andersen, a fellow workman, and which had not been replaced by Andersen after he got through the performance of the special work that he was then engaged in, and which had been permitted to lay by by Padone without being replaced, while he undertook to use the saw. The use of the guard would in no way interfere with such use of the saw as Padone was making. The space of time during which the guard was left off the machinery prior to the accident was described by the witnesses as being about a half hour.

Section 81 of the Labor Law (Consol. Laws 1909, c. 31) provides in part as follows:

"All vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws and machinery, of every description, shall be properly guarded. No person shall remove or make ineffective any safeguard around or attached to machinery, vats or pans, while the same are in use, unless for the purpose of immediately making repairs thereto, and all such safeguards so removed shall be promptly replaced."

The respondent now contends that the duty of the defendant under this provision of the statute was an absolute one, and called upon him to keep the machine in question guarded at his peril during every moment of its use. This, however, was not the theory upon which the trial court submitted the case to the jury, as appears from the following request to charge and its acceptance by the trial court:

"Defendant's Counsel: I ask your honor further to charge that if the defendant furnished a suitable guard, and used reasonable care in seeing to it that that guard was used upon the machine for which it was furnished, that the temporary absence of the guard, removed by a fellow servant, cannot be chargeable to this defendant.
"The Court: I so charge."

To this statement of law the respondent's counsel took no exception. The record shows a further request to charge and a ruling of the trial court thereon as follows:

"Defendant's Counsel: I ask your honor further to charge that the absence of the guard for a half an hour or thereabouts from the machine is not such a length of time as would necessarily place the defendant upon notice that the guard was not being used upon the machine.
"The Court: I decline to so express myself."

The refusal of the court to charge this request is claimed to have been reversible error.

[1, 2] The proofs show that Andersen had removed the guard, not for the purpose of making repairs of any kind, but to use the saw for a kind of work in which the presence of the guard was impracticable, according to his claim. When he finished this work, he negligently failed to replace the guard. Although Padone was his helper, he gave him no directions to replace the guard, which stood near by ready for use. The duty of replacing the guard "promptly" was imposed upon the master by the statute and was not delegable (Pinsdorf v. Kellogg & Co., 108 App. Div. 209, 95 N. Y. Supp. 617), but, where the guard had been removed without his direction or knowledge, then

he was entitled to a reasonable time in which either he or his superintendent or foreman by the exercise of ordinary care in inspection could have discovered its absence and caused it to be replaced.

[3] What should be a reasonable time would depend upon the surrounding circumstances. There is no proof in this case that the master or his superintendent, one Stefano, had actual knowledge that the guard was not in use when Padone was at work at the sawing bench. Hence the charge of the court should have instructed the jury clearly as to the circumstances under which notice was imputable to the master. The defendant requested an instruction to the jury to the effect that the lapse of a half hour would not in itself necessarily charge the master with notice. This request was proper. It was not obligatory upon the trial court to adopt the very language of the request. Yet the request was refused by the trial court without any attempt to convey the same idea in other or better terms, and its refusal might well have been understood by the jury as a rejection by the trial court of the fundamental proposition contained in the request itself. If the main charge had been sufficiently explicit on this point, this court might be slow to see error in the refusal to charge as requested. But, considering the main charge together with this request to charge and its refusal, we think that prejudicial error resulted.

In view of our conclusion on this point, we deem it unnecessary to discuss the other points raised by the appellant.

The judgment and order should be reversed, and a new trial granted, costs to abide the event. All concur.