CHARLES VOGEL, Respondent, *v.* AMERICAN BRIDGE COMPANY, Appellant.

MASTER AND SERVANT — A MASTER WHO PROVIDES COMPETENT FOREMAN AND SAFE APPLIANCES IS NOT LIABLE FOR INJURIES CAUSED TO SERVANT BY MISTAKE OF FOREMAN. A corporation engaged in erecting an iron or steel frame for a roof upon a building, having a competent foreman in charge of the work and the men employed therein, and having on hand at the place of the work and under the control of the foreman a sufficient supply of ropes strong enough for the work, is not liable for injuries to a workman caused by the breaking of a defective rope which the foreman by an error of judgment directed to be used instead of

another rope which the workmen desired to take from the supply furnished by the corporation; since a master who has neglected no precaution in the selection of a competent foreman and in making all reasonable provision for a safe and proper execution of the work has discharged the duty imposed upon him by law, and the risk of injury from the default or error of judgment of the foreman is one of those assumed by the workmen as incidental to the execution of the work in its details.

*Vogel* v. *American Bridge Co.*, 88 App. Div. 68, reversed.

(Argued January 17, 1905; decided February 3, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 28, 1903, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank Verner Johnson* and *E. Clyde Sherwood* for appellant. The selection of a proper and sufficient rope for the purpose of raising the truss in question from a sufficient supply furnished by the master was a detail of the work, for the proper performance of which the master was not responsible. (*Cullen* v. *Norton*, 126 N. Y. 1; *Webber* v. *Piper*, 109 N. Y. 496; *Ludlow* v. *G. B. & M. Co.*, 11 App. Div. 452; *Kimmer* v. *Webber*, 151 N. Y. 417; *Perry* v. *Rogers*, 157 N. Y. 251; *O'Connor* v. *Hall*, 52 App. Div. 428; *Yaw* v. *Whitmore*, 46 App. Div. 422; *Watts* v. *Beard*, 18 App. Div. 243; *Ulrich* v. *N. Y. C. & H. R. R. R. Co.*, 25 App. Div. 465; *Stourbridge* v. *B. C. R. R. Co.*, 9 App. Div. 129; *Moore* v. *McNeil*, 35 App. Div. 323; *Golden* v. *Sieghardt*, 33 App. Div. 161.)

*Melvin J. Palliser* and *Hector M. Hitchings* for respondent. Under the facts proven in this case, McMahon was the plain *alter ego* of the defendant, and the latter is liable for his negligent act. (*Flick* v. *B. & A. R. R. Co.*, 53 N. Y. 553; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Hussey* v. *Coger*, 112 N. Y. 616; *Crispin* v. *Babbitt*, 81 N. Y. 516;

*Hatton* v. *H. B. C. Co.*, 42 App. Div. 398; *Thomasei* v. *Griffiths*, 9 App. Div. 127; *Laughlin* v. *State*, 105 N. Y. 159; *Vitto* v. *Keogan*, 15 App. Div. 329; *Hankins* v. *N. Y., L. E. & W. R. R. Co.*, 142 N. Y. 116; *Stuber* v. *McEntee*, 142 N. Y. 204; *Benzing* v. *Steinway & Sons*, 101 N. Y. 547.)

Gray, J. The plaintiff has recovered a verdict against the defendant in an action to recover damages for a personal injury, which, he alleges, was occasioned through the negligence of the defendant. The justices of the Appellate Division, in the second department, were divided in opinion; but the judgment upon the verdict was sustained by the majority and, upon this appeal by the defendant, the question is open to us whether the evidence was sufficient to make out a cause of action. In my opinion, it was not and the judgment should be reversed.

It appears that the defendant, a corporation, had contracted to erect an iron, or steel, frame for a roof upon a factory building and the plaintiff was one of a gang of men employed by the defendant upon the contract work. The foreman, or "boss of the job," as he is called, was one McMahon, a competent man, and the workmen were under his directions. His authority comprehended the management of the work and the employment, or discharge, of the workmen on the job. At the time the accident occurred, the men were engaged in raising one of the trusses to an upright position; in order thereafter to raise it into its place in the roof. This was effected by a rope attached to the peak of the truss, which ran to the block and tackle of a pole, or derrick. A rope, which lay upon the ground, being examined by some of the men, was rejected by them, as not being strong enough. They proceeded to the tool house to get another rope and, having been asked by the foreman their purpose, were told by him to go back and use the one they had; saying "It is strong enough." They did so and made the rope fast. Before the truss was raised into position, the rope broke and the truss fell upon the plaintiff and broke his leg.

Motions to dismiss the complaint upon the plaintiff's case and at the close of the evidence, upon the ground that no negligence had been proved and that, if any there was, it was that of a fellow-servant in relation to a detail of the work, were denied. The trial judge submitted the case to the jury, upon the theory that they might find the corporation responsible for the occurrence, if, determining that the foreman had the power to do so, he had refused to the men other rope, though there in abundance, and had compelled them to use a rope which, in the exercise of ordinary care and prudence, should have been rejected. At the Appellate Division, the majority of the court, in an opinion holding that no error had been committed by the trial judge, rested the determination upon the basis that the evidence was sufficient to constitute the foreman, McMahon, the *alter ego* of the defendant and that his negligence, in not furnishing a reasonably suitable appliance for the use of the plaintiff, cast upon his principal the responsibility for the accident.

I am not able to concur in that view of this case and I am quite unable to perceive the respect, in which the defendant failed in the legal duty to its servants of furnishing proper and suitable appliances for the performance of the work upon which they were engaged and a competent foreman. I am unable to perceive how the foreman, whether it was his neglect, or whether it was an error in judgment, in failing to make use of another and better rope from the store which the defendant had provided, could cast the liability for the accident upon his employer. Under the rule, as settled in this court in a number of cases, more or less similar to this in the cardinal facts, the servant, in the work upon which the master employs him, assumes as part of the ordinary risks attendant upon, or implied from the nature of, the work, such as arise from the possible negligence of competent fellow-servants. (*Quigley* v. *Levering*, 167 N. Y. 58.) The doctrine of the responsibility of the master for the neglect, or default, of one who, in the eye of the law, is his *alter ego*, applies to the obligation to furnish to his employés a reasonably safe place to

work in and safe appliances to work with. When the master is represented by one, who may be regarded as his *alter ego*, or a vice-principal in the work, if the specific act, which is the subject of a complaint, is one which can be properly regarded as within the personal duty of the master, and not as some act in the line of a mere servant's duty, then the master is justly chargeable with the results ; whether it be an act of negligent performance, or one of omission. (*Madigan* v. *Oceanic Steam Nav. Co.*, 178 N. Y. 242, 246.) In this case, there is no dispute as to the competency of the defendant's foreman, or as to a sufficiency of suitable rope having been furnished by the defendant. The foreman, in directing the men, when on their way to get another rope, to use the particular rope on the spot, as being strong enough, may have been negligent ; but, with greater probability, he committed an error of judgment. In either case, however, upon what principle should the defendant be held responsible ? As I read the authorities, it is contrary to precedent to do so and I shall refer to a few, for illustration.

In *Cregan* v. *Marston*, (126 N. Y. 568), the accident was caused by the breaking of a rope, which was being used to hoist buckets of coal. There, as here, the supply of rope suitable for the purpose was adequate ; but, notwithstanding that fact, the plaintiff recovered below, upon the theory that it was the master's duty to watch the use of the rope and its changes of condition, and that the negligence of his agent, or deputy, became his. But, in this court, the judgment was reversed and that theory was held to be an extension of the master's duty beyond its natural and proper limit. The general rule with respect to the duty of the master to keep an appliance in order was there stated not to be operative, where he supplies proper and suitable materials to repair defects arising in the daily use of the appliance. We considered, upon the doctrine of the cases, that the contract relation between the master and his servant makes it the latter's duty, as a detail of his work, to correct the defect when it arises with the materials furnished. In that case, the error was that of an engineer, who was the agent, or deputy, of the

master, in the performance of the work. In *Kimmer* v. *Weber*, (151 N. Y. 417), the accident resulted from the falling of a scaffold, used by the defendant's workmen. The defendant had furnished suitable material for the construction of what scaffolding became necessary; but some old scaffolding, which had been constructed by other parties, was made use of by the workmen. A foreman was managing the job and he had his attention called to the insufficiency of the scaffold about to be used; but he said that he thought it would do. The judgment recovered by the plaintiff in that case was reversed in this court; where it was held that the foreman's conduct in refusing to interfere was not such negligence as to make the defendant responsible for the result and that it was, at most, but an error of judgment on his part with respect to a detail of the work. In *Madigan* v. *Oceanic Steam Nav. Co.*, (178 N. Y. 242), there was a recovery of damages for the accidental death of a stevedore, happening while engaged in the work of transferring coal from a barge to the steamship, upon the ground that it was due to the negligence of the foreman, who was the *alter ergo* of the defendant in the performance of the work. It was the duty of the foreman to furnish light for the men in the hold of the barge and there was a sufficient supply of lamps at hand, available for the purpose. He did not get them out, upon this occasion, because he " did not think it was necessary," and, in consequence of the darkness of the place, the accident occurred. The judgment was reversed in this court, on the ground that the foreman's omission was that of a fellow-servant in a detail of the work, and the general rule of the master's liability for the omission, or neglect, of one who is his *alter ego* was stated, as above referred to.

In all the cases, where the question of the master's liability in this form has arisen, it is made to depend upon whether the act omitted, or neglectfully performed, by the *alter ego* was one which might be regarded as within the personal duty of the master, or whether it was some act in the line of a mere servant's duty. If, in the exercise of judgment by the mas-

ter's representative, he omits to do something, which has been foreseen and provided against by the master, the latter should not be regarded as chargeable with a responsibility for the result. Other cases in this court illustrate the application of this rule of liability; among which I may refer to *Webber* v. *Piper*, (109 N. Y. 496), and *Cullen* v. *Norton*, (126 ib. 1). In *Johnson* v. *Boston Towboat Co.*, (135 Mass. 209), the injury complained of resulted from the use of an unsound rope, when a new one supplied by the master might have been substituted. A recovery in that case was set aside, upon the ground that the neglect of the person employed by the master to superintend the work, in not repairing the rope, was the neglect of his duty as a fellow-servant with the plaintiff. Nor is the fact at all material that the foreman, McMahon, had authority to employ and to discharge the men. In *Alaska Mining Co.* v. *Whelan*, (168 U. S. 86), the company was sued by a workman in its employ for an injury received in consequence of the negligence of its foreman, when superintending some of the mining operations. He recovered below, upon the instruction of the trial court to the jury that the test of liability was whether, upon the evidence, the foreman was the representative of the master. The United States Supreme Court reversed the judgment and held that " whether he, (the foreman, or boss of the gang), had, or had not, authority to engage and discharge the men under him was immaterial. Even if he had such authority, he was none the less a fellow-servant with them, employed in the same department and under a common head. There was no evidence that he was an unsuitable person  *  *  *  The negligence, if any, was his own negligence in using the machinery, or in giving orders to the men." He was as much the representative of the company, in performing the legal duty owing to the employer, as was the foreman here. It is not a question of the rank of the servant, when that duty is considered; the question must always, logically, be, how far was he intrusted with the performance of what was the master's duty.

It seems to me very clear, upon authority, as upon principle,

that, in this case, it was within the line of a servant's duty to get a suitable rope for the purpose of the work from the supply furnished and that it was an error of judgment on the part of the foreman, McMahon, to direct the use of the one which proved defective; for the unfortunate consequences of which the defendant cannot be justly held responsible. The contract of the master does not extend further, in the direction of indemnifying his servant against injury from negligent acts, than that the negligence must be his own, or such as is legally to be charged to him. If the master does, or must, employ some one to represent him in managing the performance of the work, and he neglects no precaution in the selection of a competent foreman and in making all reasonable provision for a safe and proper execution of the work, he has discharged his duty. As to the details, in the execution of the work, the foreman and workmen are fellow-servants. This is a logical application of the rule of law and it is a just one.

It is said that the case of *Vincent* v. *Alden*, (75 App. Div. 615; affirmed, 177 N. Y. 545), must be followed. As an authority, it has the somewhat serious disadvantage of not having been written in at the Appellate Division, or here, and, hence, the reasons for affirmance are lacking. But, if we look up the record, as my dissenting brethren have done, we find a marked and important distinction in its facts. There, the chains, which could have been used to take the bridge girder from the flat car, were in a tool car seven to eight miles away and the foreman borrowed one nearer by for the purpose. Here, the proper ropes were within the building and, therefore, at hand. ·There, the situation was as though the representative of the master had failed in the duty to furnish the suitable appliance for his workmen.

I think that the defendant, upon the evidence, given its broadest bearing and interpretation, was not responsible to the plaintiff for what happened upon the occasion in question. It was a case where an error of judgment was committed by the defendant's foreman and the risk of injury from his fault was one of those assumed by the workmen, as incidental to the

execution of the work, in its details. I think the evidence was insufficient to establish a cause of action and I, therefore, advise that the judgment appealed from be reversed and that a new trial of the action be granted ; with costs to abide the event.

CULLEN, Ch. J. (dissenting). I think that under the evidence in this case the foreman, McMahon, was not a mere fellow-servant of the plaintiff but the *alter ego* of the defendant and that for his negligence the defendant was liable. The furnishing of suitable rope and other appliances for the prosecution of the work was the master's duty. If the *alter ego* of the master refused to give the workmen a proper rope I cannot see that the case differs in principle from one where the master failed to provide rope at all. The case before us seems to be on all fours with that of *Vincent v. Alden* (177 N. Y. 455). In that case the defendant was a manufacturer and builder of iron bridges. The various members or parts of the bridge were rolled or manufactured at Rochester and sent to Clinton county where the bridge was to be erected and put in place under the directions of a foreman who had entire charge of that portion of the work. The plaintiff, who was employed on the erection of the bridge was injured by the breaking of a chain which the workmen were instructed by the foreman to use for raising a girder. The defendant had sent chains along with the bridge material to his foreman. The trial court was requested to charge that if the defendant supplied sufficient chains of proper size and adapted to the work and the superintendent, Merrill, did not use them, but selected another which might have been unfit, the defendant was not liable. The court declined to so charge in response to the request but charged that Merrill's act in selecting the chain was that of the defendant. To the charge and the refusal to charge the defendant excepted. A verdict having been recovered by the plaintiff the judgment entered thereon was affirmed by the Appellate Division and by this court. No opinion was rendered in either court, but the facts as I have stated appear from an examination of the record of the case on appeal.

It is sought to distinguish that case from the one at bar by the fact that the tool car was left at Mooers Junction, some seven or eight miles away from the point at which the bridge was to be erected. It must be borne in mind, however, that the tools, with the bridge material, were sent to Merrill in Clinton county, and that the failure to bring the tool car to the site of the bridge, if negligence, was the negligence of Merrill. But, beyond this, Merrill testified that he did take with him from the tool car a number of chains for use in erecting the bridge. The jury might have credited this testimony, and the request to charge was based upon the condition that the jury should find that the defendant had furnished sufficient chains. Therefore, the fact that the tool car was at Mooers Junction does not affect my contention that the case necessarily decided that for the failure of the superintendent to give the workmen a proper chain the defendant was liable.

Nor do I think that the decisions of the Supreme Court of the United States are in conflict with the view I have expressed. It is very possible that the Supreme Court does not attach the same importance to the power to employ and discharge workmen that this court does. Still it fully recognizes the doctrine that for the misconduct of an *alter ego* or vice-principal the master is liable. In *Alaska Mining Company* v. *Whelan* (168 U. S. 86) it was held that the foreman, for whose negligence it was sought to hold the defendant liable, was not " the general manager of its business, or the superintendent of any department of that business." The case was decided on the authority of *Northern Pacific Railroad* v. *Peterson* (162 U. S. 346). In the opinion there rendered by Justice Peckham there is an elaborate discussion of the whole subject here involved. He there lays down the rule, " when the business of the master or employer is of such great and diversified extent that it naturally and necessarily separates itself into departments of service, the individuals placed by the master in charge of these separate branches and departments of service, and given entire and absolute control therein, may properly be considered, with respect to employes

under them, vice-principals and representatives of the master as fully and as completely as if the entire business of the master were placed by him under one superintendent," and that for the negligence of such a vice-principal the master is responsible. In the present case it does not appear where the factory or works of the defendant were situated or where the beams and girders were rolled or built. It does appear, however, by the testimony of the foreman himself, sworn as a witness for the defendant, that the whole charge of erecting the structure was devolved upon him. Besides this it appears by the uncontradicted testimony of other witnesses that it was he who employed and discharged the workmen. I think that the construction of the building, or that part of it which the defendant contracted to erect, was as clearly a separate part of the general business of the defendant as was the manufacture or preparation of the material which was subsequently to be used in the construction. Therefore, even within the doctrine held by the Supreme Court of the United States the defendant was liable. The vital distinction between this case and those cited by my brother Gray is that in those cases the negligence which was the foundation of the plaintiff's claim was that of a mere foreman. Here it was the negligence of one who for all purposes was the representative and vice-principal of the defendant. When the master furnishes sufficient appliances and an unsuitable one is used owing solely to the act of a mere foreman or other employee, then such selection is a detail of the work for which the master is not responsible. But when the use of the improper appliance is due to the refusal of the master or of his *alter ego* to allow the workmen to take a proper appliance, though he may have such appliances on hand, the situation is exactly the same as if he had failed altogether to furnish proper appliances.

I vote to affirm the judgment appealed from.

O'Brien, Haight and Werner, JJ., concur with Gray, J.; Bartlett and Vann, JJ., concur with Cullen, Ch. J.

Judgment reversed, etc.