convey the estate to the remainderman, or they, with the remainderman, could convey to a third person. And, if the annuitants and the remainderman united in an assignment, the trustee would be obliged to convey to the assignee. Coster v. Lorillard, 14 Wend. 265. No other objection to the validity of the will and codicil have been suggested, and none present themselves to us.

It follows that the judgment appealed from must be reversed without costs, and judgment entered in favor of defendants declaring that the provisions of article "sixth" of said will as modified by article "third" of the codicil thereto are valid, and effectual dispositions by the testator of his residuary estate. All concur.

(117 App. Div. 387)

CONNOLLY v. HALL & GRANT CONST. CO.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

Plaintiff, a workman on a building, was directed to saw away a portion of a bridge over a sidewalk, and was injured by the fall of the remaining portion caused by a failure to support the same before the other portion had been cut away. Held, that whether the person in charge of the work was negligent in directing the timbers to be cut through without supporting the remaining portion of the bridge was for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1051–1067.]

2. SAME—FELLOW SERVANTS.

A superintendent received an order from the general manager to cut down a portion of a bridge over a sidewalk; the details of the work being left to the superintendent. There was plenty of material furnished to properly support the remaining portion of the bridge, but without supporting it the superintendent directed plaintiff to cut off the portion to be razed. During the work another directed the superintendent's attention to the fact that the remaining structure should be supported, and was directed to do so, but before the supports could be put in plaintiff sawed through the timbers and the structure fell, causing plaintiff's injuries. Held, that the furnishing of such supports was a mere detail of the work, in doing which plaintiff, the superintendent, and foreman were fellow servants, and that defendant was therefore not liable for their negligence.

McLaughlin and Houghton, JJ., dissenting.

Appeal from Trial Term.

Action by Patrick Connolly against the Hall & Grant Construction Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, HOUGHTON, and LAMBERT, JJ.

Moses Feltenstein, for appellant.
John V. Bouvier, Jr., for respondent.

INGRAHAM, J. The defendant was the contractor for the alteration of a building on the corner of Beekman and Nassau streets. What was called a "bridge" had been constructed over Nassau street, about 10 feet above the surface of the street, which extended in front of this

building, to protect persons passing on the street during the progress of the alterations, and the bridge was also used for the purpose of holding materials used in the work. This bridge was constructed upon uprights upon the surface of the street. On the night of the 10th of December, 1901, a superintendent in charge of this work, named Parrish, told the foreman of the gang of men of which plaintiff was a member to have a portion of this bridge cut down, and marked out the portion to be taken away, between 7 and 8 o'clock at night plaintiff was instructed by the foreman to saw this portion of the bridge off, and was engaged in this work when he was injured. While he was thus engaged, one of the employés called the attention of the foreman to the joint at the portion that was being sawed off, and told him that a support was necessary. The man was told to get an upright and put it under the bridge. This he started to do. While this man under the direction of the foreman was getting the upright to support the bridge, but before it was put in place, the bridge fell and plaintiff was injured.

The foreman, Reynolds, was called as a witness for plaintiff, and stated that on the night of the accident he was told by one of the workmen that there should be an upright under the place where the men were sawing; that he spoke to the superintendent about it, but the superintendent said it was strong enough; that the superintendent gave to this foreman the order to cut the bridge down, marking off on top where to start the cutting. Plaintiff testified that he was put to work sawing this bridge by Reynolds, the foreman, and Parrish, the superintendent, and that Parrish came and marked where it was to be sawed. After that the plaintiff went to work and sawed along this line through the stretcher and then commenced sawing the beam, and finally reached the stretcher on the outside. While sawing through the outside stretcher, the bridge fell. As a result of the accident the plaintiff's leg was crushed and subsequently amputated.

The superintendent, Parrish, was called as a witness for the plaintiff, and testified that he received orders from a Mr. Hall, who had charge of the work, to remove a portion of this bridge; that this bridge had been built about six months before the accident; that Reynolds, the foreman, told him that there ought to be another upright put under the end of the stretcher where they were sawing, and that he (Parrish) told Reynolds to put an upright in. Before it was put in, however, the bridge fell. The bridge appeared to be perfectly safe until the stringers were cut through. It was evident that the method adopted of doing the work of removal without supporting the structure caused the accident. In removing a portion of a structure of this kind, it was the duty of the person in charge of the work to see that the remaining portion of the bridge was properly supported, so that it would not fall when the supports were cut away. To give directions to so cut through the supports or timbers so that the remaining portion would fall was negligent and presented a question for the jury as to whether the person in charge of the work and directing its execution exercised reasonable care in doing the work. The only question presented is whether the defendant was liable for the method adopted of doing the work. In Vogel v. American Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725, the defendant had contracted to erect an iron or steel frame on

the roof of a factory building, and the plaintiff was one of the men engaged in this work. The foreman was a competent man and had authority to manage the work. At the time of the accident the men were engaged in raising one of the trusses to an upright position. The foreman directed them to use a certain rope which the men had rejected as not being strong enough. They thereupon used the rope, which broke; the plaintiff being injured. It was held that the defendant was not liable, on the ground that the foreman was a fellow servant in relation to a detail of the work; that the servant in doing the work upon which the master employs him assumes as part of the ordinary risk attendant upon or implied from the nature of the work, such as arises from the possible negligence of competent fellow servants; that the foreman in directing the man to use a particular rope as being strong enough may have been negligent or may have committed an error of judgment, but that in neither case could the defendant be held responsible for his act. The rule is there summed up as follows:

"The contract of the master does not extend further, in the direction of indemnifying the servant against injury from negligent acts, than that the negligence must be his own, or such as is legally to be charged to him. If the master does, or must, employ some one to represent him in managing the performance of the work, and he neglects no precaution in the selection of a competent foreman and in making all reasonable provision for a safe and proper execution of the work, he has discharged his duty. As to the details, in the execution of the work, the foreman and workmen are fellow servants."

Although there was a strong dissent, the rule stated in the dissenting opinion would seem to sustain this judgment, as it was there said:

"When the master furnishes sufficient appliances, and an unsuitable one is used, owing solely to the act of a mere foreman or other employé, then such selection is a detail of the work, for which the master is not responsible. But when the use of the improper appliance is due to the refusal of the master or his alter ego to allow the workman to take a proper appliance, though he may have such appliances on hand, the situation is exactly the same as if he had failed altogether to furnish proper appliances."

In O'Brien v. Buffalo F. Co., 183 N. Y. 317, 76 N. E. 161, the accident was caused by the premature explosion of some dynamite which was being used in removing some slag which had accumulated at the base of a blast furnace. The explosion of this slag had been intrusted to one Minor. Incased in the slag was a coil of iron pipe, and Minor proceeded to fill this pipe with dynamite; plaintiff's intestate assisting Minor by cutting up a stick of dynamite and dropping the pieces into the pipe. While the deceased was doing this work, Minor used a steel rod six inches long to push down the pieces that clogged the pipe, and while this work was being done the pipe exploded. The evidence tended to show that the use of a metal rod was improper, and that a wooden one should have been used. The court said that:

"From the foregoing facts no inference of liability on the part of the master could be drawn; and, if they were the only facts, the judgment below would have to be affirmed. While it is the duty of the master to warn the servant of any latent or extraneous danger in the prosecution of the work and to give him proper instructions, if instructions are necessary to guard against such dangers, this rule does not apply to an obvious risk of the work. * * * The statements of the foreman and the superintendent that there was no danger seem no more than the declarations of opinion on their part which the deceased

might accept or reject as he deemed wise. Nor do we see that any instructions to him would have added to his security of preventing the accident. The explosion was caused by the negligence of Minor in using a rod of steel, instead of one of wood. This was the negligence of a fellow servant in the performance of a detail of the work."

In the case of Pluckham v. American Bridge Company, 104 App. Div. 404, 93 N. Y. Supp. 748, which was affirmed by the Court of Appeals in 79 N. E. 1114, without opinion, a recovery was sustained upon the ground that a machine that was used, which included a rope to secure the beams which were being moved in place, was insufficient for the work that it was required to do, and that in furnishing this insufficient appliance the master was liable. There was evidence to show that the rope that was used was known to be unsafe, and that one of the workmen was sent to get another rope that was more suitable, and the workman returned and stated that there was no other rope available. This court there said:

"The evidence in this regard was clearly sufficient to have authorized the jury to find that at the time when the rope in question was used there was no other rope upon the premises which could have been obtained by the workmen to supply the place of the one that was used. * * * The obligation resting upon the master was to exercise reasonable care in furnishing safe and suitable appliances. The jury would have been authorized to find that the defendant failed in this regard in not supplying a sufficient quantity of rope safe and suitable to be used for the purposes required."

Assuming that the foreman was a fellow laborer for whose negligence the defendant would not be liable, it was held that his negligence was only a cause contributing to the accident, and that it became united with the negligence of the defendant in failing to furnish a suitable appliance. Vogel v. American Bridge Company, supra, was then discussed and the distinction between the case then under discussion and the Vogel Case was stated to be that in that case the master had furnished suitable appliances in every respect which might have been used in place of the defective rope that caused the injury, and that, the master having discharged this obligation, the foreman did not stand in the relation to the employer of an alter ego of the master. In the case then before the court that question was not of consequence, for the evidence tended to establish that the master failed in his obligation to furnish a safe and suitable appliance, and the case was therefore clearly distinguishable from the Vogel Case, and that distinction required that the case should be submitted to the jury. This case, therefore, having been decided in this court as distinguished from the Vogel Case, the particulars there stated and the affirmance by the Court of Appeals cannot be construed as overruling the Vogel Case, and therefore the principle there established is still, as I understand it, the law of this state.

The superintendent of this work, Parrish, received his orders from the general manager of the defendant, who was undoubtedly the alter ego of the defendant, to remove a portion of this structure. The details of that work were left to the superintendent, who proceeded to carry out his orders as he understood them. There is no claim but that there was plenty of materials furnished by the master to properly support the structure while part of it was being taken down. The superin-

tendent, Parrish, the plaintiff's foreman, the plaintiff, and another workman were engaged in carrying out the directions of the defendant. There was here no scaffold supplied by the master to do the work, but the structure that had been used for that purpose was being removed. The necessary result of removing such a structure is that part of it would come down as that was the object of the work that was being done. The accident resulted from the defective method adopted in removing the structure. There is nothing to show that the superintendent or the foreman had any other knowledge of the conditions that existed than had the plaintiff, and it would seem that it was as much the duty of the plaintiff to protect the end of this structure which would be left unsupported when the supports were sawed through as it was the superintendent's or foreman's duty. They were all engaged in removing this structure, and it could hardly be said that it was a matter of expert knowledge, because another workman employed in the same grade as the plaintiff saw that the structure was likely to fall when sawed through, and upon the attention of the superintendent being called to that fact this man was directed to properly support the structure, and while engaged in getting such supports the structure fell. The only fault under these circumstances would seem to be the failure of warning the plaintiff from continuing his work until the support was furnished, but it does not appear that either the foreman's or the superintendent's attention was called to the fact that the work was so nearly completed that there was not time to put in the necessary support before the support was cut through.

It was not, therefore, the use of this structure as a platform or structure that caused it to fall and injure the plaintiff, but the plaintiff was injured while removing the structure and carrying out the orders of defendant, because it was not properly supported while being so removed. The conclusion seems to be that this was a detail of the work, in doing which the plaintiff, superintendent, and foreman were fellow servants, and the neglect to properly support the structure while a portion of it was being removed was negligence in which all three joined as fellow servants, and for which, therefore, the defendant is not liable.

It follows that the complaint was properly dismissed, and the judgment must be affirmed, with costs.

PATTERSON, P. J., and LAMBERT, J., concur.

McLAUGHLIN, J. (dissenting). The defendant was obligated to furnish the plaintiff with a reasonably safe place in which to do his work, and it could not exempt itself from liability for a failure in that respect by delegating that duty to another. Benzing v. Steinway & Sons, 101 N. Y. 547, 5 N. E. 449; Probst v. Delamater, 100 N. Y. 266, 3 N. E. 184; Pantzar v. Tilly Foster Iron Mining Co., 99 N. Y. 368, 2 N. E. 24. The place here furnished was the bridge. The defendant knew how it was constructed and the weight it would sustain, of which the plaintiff was ignorant. It therefore knew, or in law was bound to know, that as soon as the plaintiff had performed the work assigned to him, viz., sawed off one of the supports, the bridge would collapse unless otherwise supported. It is of no importance whether the

superintendent, Parrish, or the foreman, Reynolds, directed the plaintiff where to saw off the timber, because whoever gave the order was the alter ego of the defendant.

The fact that the bridge was being taken down does not qualify or change this rule, because the plaintiff was just as much entitled to a reasonably safe place to work in taking down the bridge as he would have been if the bridge were being constructed. The rule which exempts a master under such circumstances presupposes in each instance that he has performed the obligation which the law imposes upon him and the injury occurs solely through the negligence of a co-employé. Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575; Pluckham v. American Bridge Co., 104 App. Div. 404, 93 N. Y. Supp. 748, affirmed in (N. Y.) 79 N. E. 1114.

The fact that there was sufficient material at hand to render the bridge secure, had the same been used, does not relieve the defendant from liability, because it was its duty, having directed the plaintiff to do certain work which rendered the bridge insecure, to see that such materials were used and the bridge made and kept reasonably safe while workmen were upon it. The plaintiff assumed the risk incident to the nature of his employment, but not the added risk resulting from the defendant's neglect, which was to strengthen the bridge, as the plaintiff's work weakened it. Whether the defendant performed its duty in this respect was, under the facts presented, a question for the jury.

For these reasons I am unable to concur in the opinion of Mr. Justice INGRAHAM, and vote to reverse the judgment and order a new trial.

HOUGHTON, J., concurs.