Settle order on notice.

---

### EVANS v. EASTMAN KODAK CO.

(Supreme Court, Appellate Division, Fourth Department. January 6, 1909.)

MASTER AND SERVANT (§ 220*)—INJURIES TO SERVANT—ASSUMPTION OF RISK—DEFECTIVE MACHINERY.

A servant thoroughly familiar with a machine which he was operating, and who knew that a part thereof had become defective and would not perform its usual functions, assumed the risk of injury by continuing to operate the machine after discovering the defect, even though the foreman assured him that it was safe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 641, 646; Dec. Dig. § 220.*]

Kruse and Robson, JJ., dissenting.

Appeal from Trial Term, Monroe County.

Action by Charles E. Evans, by his guardian ad litem, against the Eastman Kodak Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

George A. Carnahan, for appellant.
George D. Reed, for respondent.

SPRING, J. The plaintiff, a servant, has sued his master in negligence at common law to recover for personal injuries sustained January 10, 1906, while in its employ.

The defendant is a corporation engaged in the manufacture of photographic supplies in the city of Rochester. The plaintiff, a young man 19 years of age at the time of the accident, had been in the employ of the defendant for about two years. He had worked in various departments of defendant's manufactory, and, among others, in the black paper coating department, and upon a machine called the shrinker, at which he was working when the injuries were inflicted. The machine comprised two steel cylinders, steam-heated, each three feet in diameter, around which the paper ran in the drying and shrinking process. The plaintiff, a bright, capable young man familiar with

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the operation and function of the machinery, after describing the cylinders from a diagram which he had prepared, proceeded as follows:

"There is a wooden core upon the shaft, and this core is taken off by unloosening a dog at the end, and a roll of paper is then put on. The dog is wedged into this wooden core to hold it stationary. This roll was about a foot and a half in diameter, and about 28 or 30 inches long. The shaft is continuous, and goes through the spool, and has a bearing at each end. On the easterly end of the shaft is a pulley called a 'tension.' The tension operates as follows: There is a pulley fastened to the shaft, stationary, and around that pulley is fastened a belt re-enforced with iron. This belt slips around the pulley as the roll turns, and is held in place by a stick which reaches from the floor up to a part of this band, which comes out so as to hold it. This is what is called a 'strap brake.' It is a leather strap going around a pulley, and then there is a thumbscrew that screws the two pieces together, and as it is screwed down tighter it makes the shaft of the cylinder go slower, and so the paper goes slower. The dogs were placed at the end of the roll so as to fit into it, and the dog at one end was stationary. On the other end of the shaft the dog was slipped on and driven into both ends of the spool to make it tight, and there was a set screw so it would not slip out. The wooden core was about 3½ feet long by 5 inches in diameter, made of wood, and through it was a square hole that these dogs would fit into. With all this paper off from the core there appeared a longitudinal slot just the width of a buzz saw passing through the center of the core, and about a foot and a half long on one side and smaller on the other side. To wind the paper on the core the end of the paper would be put through this slot, so that the paper would be held from slipping and would wind upon the core tight. The rollers were about three-quarters of an inch directly over the heated cylinders, maybe less."

On the day of the accident the plaintiff and a co-employé named Riley were called from one of the other rooms to the black paper coating department, in which one Culhane was the foreman. The roll was ready, and they put on the tension and commenced threading the machine with the damp paper, which came too fast for them and did not wind tight around the cylinders. The wooden core was sound when the plaintiff commenced work, but after a short time he observed it was split, due to the tight tension. The core wabbled and became out of alignment. The plaintiff testified that he called the attention of Culhane to the condition of the core. The two talked the matter over and agreed it was caused by too tight tension, and Culhane loosened it. The plaintiff said he wished a new core, and Culhane told him to use it as it was and it was all right. Culhane then went away and did not come near the machine again until after the accident. The plaintiff, while endeavoring to smooth out the creases, caught his hand between one of the rollers and the heated drum, and it was crushed and badly burned. The wooden spools or cores were about 3½ feet long and 5 inches in diameter. There were plenty of them provided by the defendant in the room where the plaintiff was working, and it was not a difficult operation to change the split core for a sound one.

We have, therefore, the familiar case of a competent foreman, a skilled employé, a safe place with suitable appliances. The foreman and the employé, knowing the effect of a core split and out of center, continued its use. It may well be held that Culhane was a co-servant of the plaintiff, that he exercised his judgment in deciding to continue the use of the defective core, and the substitution of one core

for another was a mere detail of the work. Vogel v. Am. Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725; Kimmer v. Weber, 151 N. Y. 417, 422, 45 N. E. 860, 56 Am. St. Rep. 630; Neagle v. Syracuse, B. & N. Y. Ry. Co., 185 N. Y. 270, 274, 77 N. E. 1064 et seq.; Russell v. Lehigh V. R. R. Co., 188 N. Y. 344, 81 N. E. 122; Flet v. Hunter Arms Co., 74 App. Div. 572, 77 N. Y. Supp. 752; Madigan v. O. S. Nav. Co., 178 N. Y. 242, 70 N. E. 785, 102 Am. St. Rep. 495; Mahoney v. Cayuga Lake Cement Co., 126 App. Div. 164, 110 N. Y. Supp. 549.

Assuming, however, that Culhane represented the master we think the judgment cannot stand. The plaintiff, although a young man, was familiar with the operation of the machinery in that department. He knew how to run and manipulate the shrinking machine. He knew that the core was split, and that the wabbling was due to that condition. When he first observed the core it was sound. It split under his operation, and the effect was immediately apparent to him. After Culhane left him he continued to run the machine for 15 minutes, although the rolls of paper were not taken care of and piled rapidly upon him by reason of the defective core, as he well understood. The whole situation was obvious and plain to him. He assumed the risk of this defective appliance when he continued to prosecute the work with full knowledge of its condition and of its failure to perform its usual functions. Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367; Rice v Eureka Paper Co., 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585; Dillon v. Nat. Coal Tar Co., 181 N. Y. 215, 73 N. E. 978.

The court charged the jury that:

"An employé is not entitled to rely upon an assurance of safety given to him by a foreman or other employe, where the danger of the defect is open and obvious."

Also:

"If the risk of operating that machine with the split core was open and obvious, and the plaintiff assumed the risk, it makes no difference whether Culhane directed the use of that split core or not."

The law of the case was thus established by the court, and even though Culhane assured the plaintiff that the split core was safe to use, the latter knowing its condition, which was manifest, continued its operation at his peril.

Again, the plaintiff was aware of the danger of getting his hand between the superheated drum and the roller. He gives no satisfactory explanation for putting his hand in that place of danger. He may have been excited or flustrated because the machine did not operate successfully. He still was called upon to exercise care, and the record does not show that he did so. I think he was guilty of carelessness which contributed to the unfortunate accident.

The defendant's counsel asked the court to charge:

"That if the jury find that this machine, or any part thereof, was defective or out of order, and the plaintiff knew of the defect or the particular in which it was out of order, and appreciated the danger of threading the ma-

chine in that condition, as matter of law he assumed the risk, and the verdict must be for the defendant,"

—which the court declined to do, and an exception was taken. The jury might have found all the facts embodied in this request. If so, the plaintiff is not entitled to recover. For these reasons, the judgment should be reversed.

Judgment and order reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except KRUSE and ROBSON, JJ., who dissent.