WILLIAM SCHWIER, by Guardian, etc., Respondent, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

In an action to recover damages for injuries received, alleged to have been caused by defendant's negligence, plaintiff's evidence was to the effect that plaintiff, a child less than four years old, was going east on a street in the city of S., running east and west, which was crossed by the four tracks of defendant's road ; an engine was going backward to the north, on the east track, at the rate of two or three miles an hour. The engineer was on the west side of the engine, and had an unobstructed view toward the west. Plaintiff ran across the track in front of the tender, but was hit by it, knocked down, and lay uninjured just outside the east rail of the track. The engineer crossed over to the east side of the engine, looked out just as the child was opposite the space between the tender and the engine, and exclaimed, "the boy has catched it." He made no attempt to stop the engine. The rear driving wheel caught and crushed plaintiff's foot. It appeared that the space between the back end of the engine and the rear driving wheel was from three to four feet, and that the engine could have been stopped within a space of two or three feet. There was no flagman at the crossing. The engineer was not called as a witness. *Held*, that the evidence justified a finding of negligence on the part of the engineer ; and a refusal to nonsuit was not error.

On the trial evidence was given, without objection, as to whether the bell was rung or not as the engine approached the crossing. At the close of the charge the defendant's counsel asked the court to charge that that question had no bearing upon the issue. The court, in reply, said to the jury, "I do not think it has, but if you think otherwise you are not bound by my opinion." *Held* no error.

(Argued December 5, 1882 ; decided December 15, 1882.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made February 11, 1881, which affirmed an order denying a motion for a new trial.

The nature of the action and the material facts are stated in the opinion.

*S. W. Jackson* for appellant. An engineer is not charge-able with negligence in omitting to keep a watch on each side of his engine, to see that no one was injured by coming up to the engine laterally. (*Bulger* v. *Albany Ry.*, 42 N. Y. 459.) The onus was upon the plaintiff to prove that his injury was caused by negligence on the part of the defendant's employes. (*Directors M. R. Co.* v. *Jackson*, L. R., 3 App. Cas. 193; *Ryder* v. *Wombwell*, L. R., 4 Ex. 48; *Baalec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 366.) The court erred in refusing to charge the jury that the question whether the bell was ringing or not as the engine approached or came upon the crossing has no bearing upon the issues in this case. (*Pakalensky* v. *N. Y. C. & H. R. R. R. Co.*, 82 N. Y. 427.) It was the province of the jury to determine whether the evidence was sufficient to sustain a verdict of negligence against the defendant, and the judge, by charging as matter of law that it was sufficient, com-mitted an error for which a new trial should be granted. (*Read* v. *Hurd*, 7 Wend. 408.)

*E. W. Paige* for respondent. It was the engineer's duty to attempt to stop when he saw the boy jump in front of his engine. (*Bernhardt* v. *R. & S. R. R. Co.*, 1 Abb. Ct. of App. 131, 137-8; *McGrath* v. *N. Y. C.*, 63 N. Y. 522, 528; *Ihl* v. *Forty-second St. R. R. Co.*, 47 id. 317, 324; 15 Hun, 573-4.) The evidence of there being no flagman at the crossing was properly received. (*McGrath* v. *N. Y. C.*, 63 N. Y. 522; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 id. 518, 523.)

Danforth, J. The cause of action was injury to the per-son of the plaintiff, occasioned, as he alleged, by the defend-ant's negligence, and issue was joined by the defendant's denial of that allegation. At the time of the injury the plaintiff was less than four years old, and contributory negligence on his part was not averred. The trial court refused to grant a nonsuit, and, after verdict, denied the defendant a new trial.

The appeal is from the order then made, and the question raised relates to the correctness of the ruling of the trial court.

It is an elementary rule that questions as to the sufficiency or effect of evidence belong exclusively to the jury, and although it is in practice so limited as to require that the evidence must be such as in some reasonable view may satisfy an unprejudiced mind of the existence of the disputed fact, it remains that it is only where there is no legal evidence which, if believed, will sustain the verdict, that the judge can take the case from their consideration. This rule, in all its aspects, has been so frequently discussed that argument upon it is unnecessary. But the appellant now insists that this case is within the exception, and that the court erred in taking the answer of the jury to the question at issue.

It is conceded that the defendant's locomotive caused the injury, and that the locomotive was at the time in the hands of the defendant's engineer; therefore, as the trial court properly said, "so far as the purposes of this case are concerned, the defendant was present in person, and if the engineer neglected his duty, and that neglect caused the injury, the defendant caused it." Was there evidence of these facts? The accident occurred in the city of Schenectady, at a point where the defendant's road, with four tracks, intersected and crossed Front street. The street extended east and west — the railroad north and south. The locomotive was going backward, pushing its tender upon the fourth easterly track, from the south toward the water tank or hydrant, at "the rate of two or three miles an hour." The hydrant was seventy feet north of the north curbstone of Front street, and ninety feet from the place of the accident.

The child came easterly along the south side of Front street to the track, as if intending to cross; the tender was then on the street, and, seeking to go in front of it, he got to "about the middle" of the street, where he succeeded, but was hit by the north-easterly corner of the tender and knocked down, and "lay upon his back by the side of the rail on the easterly side of the tender," kicking up his heels. One W., an engineer in

the employ of the defendant, was then standing on the railroad, north of Front street and east of number four track; he saw the child lying there, and went toward him. Before he reached him, he saw the back driving wheel of the engine — which in its then position was the first that came along — run over the child's foot. So much was established.

R., a witness who had seen and watched the engine coming from the south, and the child while it was on the westerly side of the track, started to go to its assistance, and had reached a point on the third track, near the engine, when he saw the child at the place above referred to, between the tender and the engine, and immediately after saw the engineer step from the westerly side of the engine, where he had been standing, to the east side of the engine; saw him look out, and heard him say "the boy has catched it," or, "he has catched it."

The engine was not stopped nor was any effort made to stop it. It went on to the water tank. It is not doubted that the words of the engineer referred to the child, but notwithstanding this evidence, the contention of the learned counsel for the appellant is, that there is none "tending to show that the engineer saw the child, or had any knowledge that he was in a position of danger until after the injury." The evidence I have referred to seems to negative this assertion, and is itself uncontradicted. It is also shown that the space between the back end of the engine and its first driving wheel was from three to four feet. It follows that as the boy was opposite the space between the tender and the engine, when looked at by the engineer, there must have been at that time more than that distance between him and the wheel, and it is in evidence that the engine could have been stopped within a space of two or three feet. But, after passing the first wheel, others were to be encountered, and W., the witness above referred to, testified that in fact they all passed by the boy before he was picked up.

By the testimony of two witnesses, therefore,— one on each side of the track, each having his attention directed to the child,—it was proven that he was lying just outside the rail

and in the space opposite the point where the tender and the engine were connected. By the positive testimony of one of the witnesses the engineer also put himself in such situation that he could see the child there lying; by like testimony of the other that the injury complained of was thereafter inflicted. So stripping the case of all doubtful matters in evidence and leaving nothing to inference, it appears that the engineer saw the child in such position by the rail that even an instinctive, blind, and unintelligent struggle or effort on its part to escape or rise, or even move, would very likely result in contact with the wheel of the locomotive, and yet he passed on without an effort to arrest its progress. Surely in these facts is an answer to the defendant's contention.

But there are other circumstances which the jury might weigh. In one view they bear strongly against the defendant. As the engineer came from the south toward the crossing, he was on the west side of his engine,—his proper place in reference to the convenient management of the machine. At this crossing there was no flagman, and some vigilance might be expected from the engineer as to obstructions upon the track, with a view to the safety of the defendant's property, if not with regard to the citizen who might innocently be upon the crossing or approaching it. From that position he had an unobstructed view toward the west, and in that direction his eye would naturally and easily range. The child came from the west, within the sphere of the engineer's observation. He might have seen him as he approached the track, or as he came diagonally over the first, second and third tracks toward the tender. It was a child's race with a locomotive; it would naturally excite curiosity, and as he gained on the engine and passed out of sight in front of the tender, some anxiety might have been provoked as to his fate; curiosity at any rate would continue. Suppose that up to this time the engineer had seen and watched the child, his next step was logical and intelligent. It was the effect of a sufficient cause. He could no longer see the child from his place on the west side of the engine, and, therefore, he went to the east side of the engine,

where his curiosity or his apprehension might be gratified. There was also to be construed the remark of the engineer on that occasion: " He has catched it." The jury might conclude that this was not an expression of horror, or alarm, or pity at the situation of a child then for the first time seen; that it was not even a manifestation of astonishment, an emotion which they might perhaps expect a person would feel on such an occasion, if the sight was unexpected. They might think that he would not only cry out, but instinctively place his hand upon the lever, that the motion might, if possible, be stayed, but that here was no exclamation, as there was no effort to stop. They might think that his utterance indicated that he had seen what he expected or had been looking for; that he could not have referred to any injury from the locomotive, for its wheel had not reached the child. His words may have been the sequence of his thoughts, expressing consciousness of a result which had been looked for.

But the appellant argues that the engineer went to the east side, because of the child's cries. There is no evidence that the child cried. If such inference was possible, it was not necessarily the only one. The fact that he went from one side of his engine to the other was known; why he went there was the important question. It is assumed by both parties that the child was in some way the cause of his going. Did he know intuitively that the child was there? or, from what he had already seen, did he expect to find the child there? or was he drawn thither by the child's cries? If the first, his movement would have no significance; if either of the others, it might have, according to the estimation of the jury.

So was it for that tribunal to say whether the omission to stop or attempt to stop the engine was negligence. They were not bound to discharge the defendant upon the theory that it had omitted no prudent or efficient act, when it was in evidence that the engineer had omitted all things, and had put forth no effort to save the child from possible death or mutilation. Without justly incurring the imputation of passion or prejudice, reasonable men might on the evidence find that the engi-

neer in fact saw the child approaching, watched his progress by the side and to the front of the tender, anticipating what might happen with as much certainty as the witness remembers what did happen. If he had not already followed the child with his eyes, what influenced him to look at the east as the child went that way? It was for the jury to answer.

It may be conceded that the evidence upon which the defendant is charged is slight; it is true that it consists partly of inference. But in weighing facts proven, and estimating the value of inferences proper to be drawn from those facts, it is to be borne in mind that the inferences are derived from the conduct of the engineer. In the aspect above presented, it imputes to him knowledge derived from actual observation of the child's approach, of inevitable danger to him, not only from collision in the first instance with the backing tender, but knowledge that he caught the blow from it, and then actual knowledge from observation that the boy was beneath the tender, in a position where the slightest motion might cause his death. If the engineer had not this knowledge — if these inferences were not well founded, they could have been removed by his testimony. It was not given, and while the omission to call the engineer as a witness is not evidence against the defendant of the existence of any fact, it is cause for taking such testimony as is in the case — and which, if untrue, he might have contradicted or explained — most strongly against it. (*Bleecker* v. *Johnston*, 69 N. Y. 309.)

At the close of the judge's charge the counsel for the defendant asked the court to charge the jury that the question whether the bell was rung or not, as the engine approached or came upon the crossing, had no bearing upon the issues in the case. The judge, addressing the jury, said: "I do not think it has, but if you think otherwise, you are not bound by my opinion in this instance;" and to this qualification the defendant's counsel excepted. The court proceeded: "I say, gentlemen, that whether the bell was rung or not, in my opinion, would make no difference with such a young child, but I leave that question with you." Defendant excepted to the last

remark.  During the trial evidence was given as to whether the bell was rung or not ; it was not objected to.  I do not think the judge was called upon to charge as requested by the defendant's counsel, but he went quite far enough in expressing his own opinion.  It might, or not, be entirely unimportant so far as the child was concerned; if rung, it might have attracted his attention and diverted him from his purpose.  It was competent, however, as bearing upon the conduct of the defendant.  Each act of the engineer, and his omission to act, was to be taken in connection with all the facts and circumstances which entered into or surrounded the transaction. (*Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464.)  It was pertinent to the issue in the same sense as other facts, viz. : that the engine was backing down, the fireman on top, and no flagman, were pertinent ; and it is obvious that the remark excepted to meant nothing more than this.  It was one of a group of facts, and, separately or together, they presented a question for the jury and not for the court.  There was no intimation that the failure to ring the bell was chargeable to the defendant as negligence, nor did the judge charge in regard to it in any manner until requested by the defendant, and he then committed no error.

It follows, from what has been already said, that the judge was right in his conclusion that there was evidence in the case proper for submission to the jury, and which, if credited by them, would warrant a verdict in favor of the plaintiff.

Therefore, the order denying the defendant's motion for a new trial should be affirmed.

All concur, except RAPALLO and EARL, JJ., not voting, and TRACY, J., absent.

Order affirmed.