PLUCKHAM v. AMERICAN BRIDGE CO.

(Supreme Court, Appellate Division, First Department. May 5, 1905.)

1. MASTER AND SERVANT—EMPLOYERS' LIABILITY ACTS—MECHANICAL CONTRIVANCE.

A "buggy," consisting of a tongue about 14 feet long, with two large wheels at its rear end, connected by an axle, used to move iron beams in the construction of a building, is not a mechanical contrivance, within the meaning of the employers' liability act (Laws 1897, p. 467, c. 415, § 18), requiring persons employing others to perform labor in the erection of a building to furnish safe and suitable mechanical contrivances.

2. SAME—FURNISHING SAFE APPLIANCES—DELEGATION OF DUTY.

The master is bound to exercise reasonable care and prudence in furnishing necessary, safe, and suitable appliances for the prosecution of the work, and may not delegate his duty in this regard, so as to exempt himself from liability in case the person to whom it is delegated fails to perform the same.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 175.]

3. SAME—CONCURRENT NEGLIGENCE OF FELLOW SERVANT.

The fact that a fellow servant may, by care and caution, operate a defective and dangerous appliance so as not to injure other servants, does not exempt the master from liability for failing to use reasonable care and prudence to furnish a safe and suitable appliance in the first instance.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 518, 527.]

4. SAME—QUESTIONS FOR JURY.

Whether a master was guilty of negligence in failing to furnish a sufficient quantity of safe and suitable rope to be used in raising iron beams for a building under process of construction *held*, under the evidence, a question for the jury.

5. SAME—CONCURRENT NEGLIGENCE—EFFECT OF MASTER'S LIABILITY.

The fact that the negligence or erroneous judgment of a foreman in directing a servant to use unsafe rope concurs with the negligence of the master in failing to furnish suitable rope does not relieve the master from liability for a consequent injury to the servant, whether the foreman be considered as a vice principal, or merely as a fellow servant.

McLaughlin and Ingraham, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Charles Pluckham against the American Bridge Company. From a judgment dismissing the complaint, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Charles Caldwell, for appellant.
Frank Verner Johnson, for respondent.

HATCH, J. The plaintiff was an ironworker in the employ of the defendant. The accident which produced the injury complained of was caused by the breaking of a rope. The defendant was engaged in the construction of a building upon a lot running through the block from Seventy-Fourth to Seventy-Fifth street, near Avenue A, in the borough of Manhattan, city of New York. In the course of such construction it became necessary to move seven iron beams, about 20 feet long by 10 inches wide, and weighing from two to three tons. The contrivance which was made use of for this purpose was called a "buggy," and consisted of a tongue about 14 feet long, with two large wheels at its rear end, connected by an axle of a peculiar shape. A chain was attached to the rear end of the buggy, and used to raise the beams from the ground and hold them suspended under the axle. The method of use was to suspend the beams under the axle by attaching the chain at about their center; then to pull the tongue down upon the beams in a horizontal position—it acting as a lever in raising the beams—and wrap the tongue and the beams together with a rope. The men in charge of this work, including the plaintiff, were under the direction of a foreman. When the buggy was placed in position astride the beams, and before the actual loading had begun, the foreman's attention was called to the condition of the rope used in tying down the tongue; and it was stated that it was too light for the strain to which it was to be subjected, and was therefore unsafe. Thereupon

the foreman sent a workman for another rope, and he returned with the statement that "there was no lines to be got; * * * there was no line in the shanty." The foreman then directed the men to use the rope which they had. The plaintiff at this time had gone for a drink of water, and when he returned the buggy had been pushed over the beams, the tongue brought down, and the men were tying it with the rope. The foreman directed the plaintiff to get hold of the tongue and keep it around. When loaded, the beams balanced under the axle of the buggy, and the plaintiff's position at the tongue was for the purpose of directing the course over which the load would be moved. While he was in this position the rope which held down the tongue broke, and the plaintiff was thrown into the air, came down striking upon the back of his head, and sustained severe injuries.

The evidence on the part of the plaintiff tended to show that there was rope in and about the building and the premises; yet it also disclosed that such rope was being used for various purposes by other workmen employed on the building, and that the only way in which additional or other rope could have been procured was by taking it away from some of the other workmen who were at the time engaged in making use of it. The evidence in this regard was clearly sufficient to have authorized the jury to find that, at the time when the rope in question was used, there was no other rope upon the premises which could have been obtained by the workmen to supply the place of the one that was used. The workman who was sent for the rope reported that he could not find any. Other witnesses testified that no rope could be obtained, save by fighting for it to get it from somebody else, and that all the rope furnished was in use.

At the close of the evidence, upon motion of the defendant, the court dismissed the complaint on the ground that the furnishing of the rope was a mere detail of the work; that the foreman was a fellow servant of the plaintiff, and either negligently directed that the workmen use a rope which he knew was insufficient, or that, in the exercise of judgment, he erroneously determined that it was of sufficient strength for the use to which it was devoted. The claim was also made that the buggy was a mechanical contrivance, within the provisions of the employers' liability act (chapter 415, p. 467, § 18, Laws 1897), and that therefore the plaintiff was entitled to recover under the rule of law which the statute provides. Upon this subject the court held that the buggy was to be regarded as an implement, and did not fall within the terms of the statute, so that no liability could be predicated against the defendant under its provisions. We agree with the learned court below in the view which it took of the latter question.

We are not, however, able to agree with the conclusions reached by it respecting the first question. It is settled by a nearly unbroken line of authorities in this state—

"That a master is bound to use all reasonable care, diligence, and caution in providing for the safety of those in his employ, and furnishing for their use in his work safe, sound, and suitable tools, implements, appliances, and

machinery in the prosecution thereof, and keeping the same in repair. This is the master's duty, and he cannot exempt himself from liability for its omission by delegating its performance to another, or, having required work to be done, by omitting precautions and inquiries as to the time and manner of its performance." Benzing v. Steinway & Sons, 101 N. Y. 547, 5 N. E. 449.

The obligation to furnish necessary, safe, and suitable appliances for the prosecution of the work is the duty of the master. In this regard he is required to exercise reasonable care and prudence. He may not delegate it so as to exempt himself from liability in the event that the delegated authority fails in the performance of the duty, and the risk which the servant assumes does not begin until the discharge of this duty by the master. Pantzar v. Tilly Foster Iron Mining Co., 99 N. Y. 368, 2 N. E. 24; Probst v. Delamater, 100 N. Y. 267, 3 N. E. 184. So familiar are these rules that at this day it seems almost unnecessary to state them. They are also accompanied by another rule, equally well settled:

"That a fellow servant may, by care and caution, operate a defective and dangerous machine so as not to produce an injury to others, does not exempt the master from his liability for an omission to perform the duty which the law imposes upon him of exercising reasonable care and prudence in furnishing safe and suitable appliances for the use of his servants. The rule which excuses the master under such circumstances presupposes that he has performed the obligations which the law imposes upon him, and that the injury occurs solely through the negligence of the co-employé."

Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575; Coppins v. N. Y. Cen. & H. R. R. Co., 122 N. Y. 557, 25 N. E. 915, 19 Am. St. Rep. 523; Benzing v. Steinway & Sons, supra.

Applying these rules to the evidence in this case, it is manifest that a question was presented which required its submission to the jury. The obligation resting upon the master was to exercise reasonable care in furnishing safe and suitable appliances. The jury would have been authorized to find that the defendant failed in this regard, in not supplying a sufficient quantity of rope safe and suitable to be used for the purposes required.

Nor was the defendant relieved from his liability by reason of the action of the foreman, whether he be considered as the alter ego of the master, or merely a fellow servant with the plaintiff. In either event, the most that could be said in favor of the defendant is that the foreman either negligently or through an error of judgment directed the employés to make use of the unsafe rope. But this was only a cause contributing to the accident, and it became united with the negligence of the defendant in failing to furnish a suitable appliance. The case is brought, therefore, squarely within the rules announced in the foregoing authorities, and hence it was error to dismiss the plaintiff's complaint.

It is said, however, that the recent case of Vogel v. American Bridge Co., 180 N. Y. 373, 73 N. E. 1, has changed by either overruling or modifying the doctrine announced in the authorities to which we have called attention. It must be confessed that this authority staggers the doctrine of alter ego, and, in common parlance, it may be said to have rendered it quite "groggy." The decision in that case, however, was made to rest upon two facts:

one, that the master had furnished suitable appliances in every respect, which might have been used in place of the defective rope that caused the injury; and, second, that, the master having discharged this obligation, the foreman did not stand in the relation to the employé of the alter ego of the master, and, in directing that the defective rope be used, was either guilty of an act of negligence or of an error in judgment; that, in performing this act, he stood in the relation of a fellow servant to the plaintiff, and, as it was the sole cause of the accident, it was his negligence or error of judgment alone, and not the negligence of the master. So that therein there was no contributing negligence, as the court held, of the master with the act of the servant. For that reason the case was taken out of the operation of the rule of the cases above adverted to, as well as those discussed in the opinion in that case. The prevailing opinion therein clearly recognizes the doctrine to which we have called attention. Its language is:

"The doctrine of the responsibility of the master for the neglect or default of one who, in the eye of the law, is his alter ego, applies to the obligation to furnish to his employés a reasonably safe place to work in, and safe appliances to work with. When the master is represented by one who may be regarded as his alter ego or a vice principal in the work, if the specific act which is the subject of a complaint is one which can be properly regarded as within the personal duty of the master, and not as some act in the line of a mere servant's duty, then the master is justly chargeable with the results whether it be an act of negligent performance or one of omission."

The line in that case was sharply drawn, and the division of view in the court was governed by the relation which existed between the defendant and the foreman. In the present case such question is not of consequence, for here the evidence tends to establish that the master failed in his initial obligation to furnish a safe and suitable appliance. Had that fact appeared in the Vogel Case, or if the evidence had been sufficiently strong to authorize the jury to find it, the decision would have been the other way, and evidently by an undivided court. This case therefore is clearly distinguishable from that, and this distinction required that the case should be submitted to the jury.

The judgment and order should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and O'BRIEN, J., concur.

McLAUGHLIN, J. (dissenting). I am unable to concur in the opinion of Mr. Justice HATCH, because it is opposed to the rule laid down in Vogel v. American Bridge Company, 180 N. Y. 373, 73 N. E. 1. The principle there applied is the one to be applied here, and necessitates an affirmance, instead of a reversal, of the judgment. In that case the defendant was engaged in erecting an iron or steel frame for a building. The supervision of the work, including the employment and discharge of workmen, was committed to a foreman. During the progress of the work it became necessary to raise an iron or steel truss to an upright position. An effort was made to do this by a rope which, after passing around

the truss, ran to the block and tackle of a derrick. The rope which was used was first examined by some of the men engaged in doing the work, and by them rejected as not being strong enough, and thereupon one of them went to a house near by for the purpose of getting another. He was there met by the foreman, who inquired what he wanted, and, on being informed, told him the rope they had was strong enough, and to go back and use that. He went back, this rope was used, and in raising the truss the rope broke, and plaintiff was injured. It was held that the foreman was not the alter ego of the defendant, and that the use of the rope was due either to his negligence or error of judgment, for which defendant was not liable. In the case now before us the defendant was also engaged in erecting an iron or steel frame for a building, and during the progress of the work it become necessary to move some iron or steel beams which lay on the ground from one side of the building to the other. The method employed for doing this was by the use of what is term a "buggy," which consisted of two wheels connected by an axle, with a tongue about 14 feet in length. A chain was attached to the axle; this was passed around the beams a little beyond the center; and then, after they had been lifted from the ground, one end of the beams was fastened to the tongue by means of a rope. The man who had charge of the work was not the general foreman, as in the Vogel Case, but one who simply had charge of the gang of men engaged in moving the beams. He did not have the power to hire or discharge men, or in fact any power, so far as appears, except to give directions as to the manner in which the beams should be moved. After the "buggy" had been placed in position, it was suggested by some of the workmen that the rope which they had was not strong enough, and thereupon one of them went for another, but returned without having procured it, and the foreman directed that the one which they had be used. It was used, broke, and plaintiff was injured. A fair consideration of the testimony bearing on the subject shows that there were other ropes which could have been procured. However, this is immaterial, under the rule laid down in the Vogel Case. The use of the rope was due either to the negligence or error of judgment of the foreman, and for which defendant was not liable. He decided that the rope was sufficient, and directed that it be used. This is precisely what took place in the Vogel Case. The cases cannot be distinguished in principle, and, unless this court is to refuse to be bound by or to follow the decisions of the court of last resort, then the judgment appealed from must be affirmed.

INGRAHAM, J., concurs.