EVA HENSON, as Administratrix of the Estate of WILLIAM S. HENSON, Deceased, Respondent, *v.* LEHIGH VALLEY RAILROAD COMPANY, Appellant.

**Railroads — obligation of railroad company to passengers different from that to employees — when rule of res ipsa loquitur does not apply to injury to employee.**

The relation between a railroad company and a passenger is such as to require it to keep its cars and tracks in a perfect and safe condition for the transportation of passengers with entire safety, so far as human prudence can accomplish these results.

The relation between a railroad and its employees is of a different character in that as to them it is only required to exercise ordinary, reasonable care and caution to prevent accidents.

One of the essential elements permitting the application of the rule, *res ipsa loquitur*, in favor of a plaintiff is that the accident complained of shall be of such a character as does not ordinarily occur where the party charged with responsibility has exercised the degree of care and caution required by law to avoid such an accident.

This rule does not apply, therefore, to the case of an injury to an employee, a freight brakeman, by the derailing of a car upon which he was riding. No presumption arises from the mere happening of such an accident that the railroad has not discharged its obligation toward the employee.

*Henson* v. *Lehigh Valley R. R. Co.*, 122 App. Div. 160, reversed.

(Submitted December 17, 1908; decided January 29, 1909.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 13, 1907, which reversed a judgment in favor of

defendant entered upon a dismissal of the complaint by the court at a Trial Term and an order denying a motion for a new trial and granted a new trial.

The action was brought to recover damages sustained by the death of the plaintiff's intestate alleged to have been caused by the negligence of the defendant in the maintenance and operation of its road and cars.

Although quite unsatisfactory at some points we shall assume that there was evidence tending to establish the following facts:

The intestate was a freight brakeman in the employ of defendant. One evening as he was riding in the line of his duty on top of a train of freight cars one of the latter became derailed and tipped over on him and killed him. This happened as the train was going around a curve of about six degrees at a speed of from four to six miles an hour. The car which tipped over was a loaded one. After the accident it was found lying on its side diagonally across the track detached from the car both in front and in the rear of it with its top turned towards the engine and its trucks derailed. Car wheel marks were found on the ties for a distance of about one hundred and seventy feet back from where the car lay, and at that distance a mark or cut was found on the right-hand rail (looking towards the engine) indicating that a car wheel had run across the rail at this point. This mark and the marks on the ties showed that the wheels left the track towards the right increasing their divergence as they moved along. Near this point of the commencement of the wheel marks there was a space at the joint of two rails five-eighths of an inch in width which was from one-eighth to one-quarter of an inch more than the ordinary space. Within this distance of one hundred and seventy feet there were two or three ties of which the ends on one side of the track were not close up against the rails and a few ties which showed signs of superficial wear and decay; also some appearance of quicksand in the track ballast. The end of the car next in the rear of the one mentioned also was derailed by the accident.

The wreckage was taken to defendant's yard at Sayre and subsequently two trucks, somewhat identified as those belonging to the overturned car, were examined. In the case of one of them it was found that a column bolt was missing and also that the nut at one end of one of the trusses designed to support the bolster was wanting, and that the truss had receded from its proper position by several inches, the thread where the nut was missing being worn and rusted. The column bolt and this truss rod were each part of the construction designed to support and distribute the weight of the superstructure of the car, and the absence of the column bolt and the defective condition of the truss rod tended to weaken this construction and allow the weight of the car to break down the bolster and settle down on the side gearing of the truck and thus prevent the latter from turning readily on a curve and on the other hand make the wheels of the truck liable to " jump " the rails. The bolster was found broken after the accident. There was nothing to indicate how long the column bolt had been missing.

*Daniel J. Kenefick* and *Lyman M. Bass* for appellant. Negligence of the defendant cannot be presumed from the happening of the accident under the circumstances and evidence in this case. (*De Graff* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 125; *Grant* v. *P. & N. Y. C. R. R. Co.*, 133 N. Y. 657; *Dobbins* v. *Brown*, 119 N. Y. 188; *Rende* v. *N. Y. & T. S. S. Co.*, 187 N. Y. 382; *Starrer* v. *Stern*, 100 App. Div. 398; *Moran* v. *Mulligan*, 110 App. Div. 208; *Cunningham* v. *Dady*, 191 N. Y. 152; *Stackpole* v. *Ray*, 99 App. Div. 262; *Fink* v. *Slade*, 66 App. Div. 105; *Lane* v. *N. Y. C. Co.*, 125 App. Div. 808; *Burns* v. *O. S. I. & M. Co.*, 188 N. Y. 175; *Warner* v. *E. Ry. Co.*, 39 N. Y. 468.)

*W. Smith O'Brien* for respondent. The death of plaintiff's intestate having been caused by the derailment of a car, the ownership, management and control of which, as well as

of the roadbed, was vested exclusively in the defendant, proof of the accident and the attendant circumstances cast upon the defendant the burden of explaining its cause, and it was error to grant defendant's motion for a nonsuit. (*Edgerton* v. *N. Y. C. & H. R. R. R. Co.*, 39 N. Y. 227; *Adams* v. *U. R. R. Co.*, 80 App. Div. 136; *Areson* v. *L. I. R. R. Co.*, 10 N. Y. S. R. 331; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 563; *Breen* v. *N. Y. C. & H. R. R. R. Co.*, 109 N. Y. 297; *Caldwell* v. *N. J. S. Co.*, 47 N. Y. 293; *Griffin* v. *Manice*, 166 N. Y. 188; *Peck* v. *N. Y. C. & H. R. R. R. Co.*, 165 N. Y. 347; *Eaton* v. *N. Y. C. & H. R. R. R. Co.*, 163 N. Y. 391; *McGuire* v. *B. T. Co.*, 167 N. Y. 208.)

HISCOCK, J. A decision in this case is not free from difficulties whichever way it goes.

The Appellate Division in reversing the judgment of nonsuit held that the plaintiff had failed to establish her allegations of negligence with one exception. We think that this decision was clearly right in so far as it held that no sufficient connection had been shown between the accident and various alleged defects in defendant's track and car. It would not only be speculation, but speculation in the face of opposing evidence to hold that the space between two of the rails or the alleged defects in the ties or ballast caused the car which killed intestate to leave the track. While a jury probably might be permitted to say that the absence of a column bolt tended to impair the construction of a loaded freight car so as to increase the chances of its wheels leaving the track on a curve, there was no evidence from which it might be permitted to say that the column bolt missing from the truck examined in the Sayre yard, assuming that that truck belonged to the freight car in question, had been gone for such a length of time or under such circumstances as to make the defendant guilty of negligence. Very possibly it became displaced in the wreck, but at any rate mere proof that it was missing after the accident did not charge defendant with negligence for not having prevented or discovered its absence.

By her evidence in regard to the defective truss rod of the bolster the plaintiff came nearer establishing a case for the consideration of the jury. The evidence that the trucks found at Sayre were those which had been under the derailed freight car was far from satisfactory, at least in regard to one of them, but we shall assume that a jury could have said that they were the trucks. The evidence fairly establishes that the defective condition of the truss rod would tend to let the weight of a loaded car down on the bolster and break the latter, as it was found broken, and then let the weight down on the side gearing of the truck and prevent it from turning with the wheels on a curve and thus tend to derailment. In the case of this rod also there was evidence from which a jury could find that the thread at the end was worn and that the nut necessary to hold the rod in place had been gone for some time. Thus far we shall assume that there was evidence for the jury, but at this point we encounter an obstacle to plaintiff's recovery which, although apparently not considered thus far, necessarily obtrudes itself on our attention when we examine and test plaintiff's chain of evidence.

The case was tried and has been argued fairly and plainly on the theory that it was the front truck of the derailed car which left the rails. The witness Hendrickson, plaintiff's brother, who described the wheel marks on the ties and on the right-hand rail over the space of one hundred and seventy feet before the car tipped, quite clearly seems to be talking about the wheels of one truck. The opinion in the Appellate Division expressly proceeded on the theory that it was the forward truck which left the track and counsel for the respondent specifically takes that position as the basis of his argument in this court. The position of the overturned car seems to be in accordance with this theory. It is pretty apparent that if the forward truck had left the rails and the wheels were diverging further and further from the latter all the time as the evidence shows, and the car was being pushed along by those behind it, we should naturally have such a situation of the derailed car as was disclosed after the

14

accident. On the other hand if the wheels of the rear truck had left the rails and the car was being dragged along it hardly seems possible that the same result would follow.

The witnesses do not pretend to identify the defective truck found in the Sayre yard as the front truck. So far as we can discover from the evidence or from the brief of counsel there is nothing whatever to show that it might not just as well have been the rear as the forward truck. If it was the rear truck it does not at all sustain the theory upon which the case thus far has proceeded and upon which it seems to us it must proceed. If the defective bolster truss rod did not belong to the forward truck then on plaintiff's theory it did not cause this accident. We certainly cannot say that because there was one defective truck under this car which under certain circumstances might have caused such an accident as happened and because such an accident did happen that, therefore, the defective truck must have been in the proper place to cause the accident. That would be to proceed in speculation to undue lengths. Two facts being established a jury might infer the third one. If it were directly established that one truck was defective and that the accident happened by reason of a defective truck it would be permissible to find that the defective truck was at the proper point to cause the accident. If it were established that a truck was defective and at the right position to cause the accident, it would be permissible to find that it did in fact cause it. But we may not from proof of one fact infer the other two and say that because there was a defective truck it must have been at the right position to cause the accident and that it rather than something else did in fact cause it. For this reason we think that the plaintiff's case has failed upon this ground.

It is insisted on behalf of plaintiff that under the rule of *res ipsa loquitur* mere proof of the accident casts the burden upon the defendant of giving some adequate explanation thereof which would free it from the imputation of negligence, and that this obligation has not been discharged. This view in our judgment cannot be sustained on the facts of this case.

One of the essential elements permitting the application of this rule in favor of a plaintiff is that the accident complained of shall be of such a character as does not ordinarily occur where the party charged with responsibility has exercised the degree of care and caution required by law to avoid such a mishap.    If intestate had been a passenger and had been killed by a derailment of cars such as occurred, the accident itself undoubtedly would have been *prima facie* evidence of negligence calling on the defendant for an explanation, and the reason why the rule would have been applied to such a case is very evident.    As was said in the case of *Edgerton* v. *N. Y. & Harlem R. R. Co.* (39 N. Y. 227–229), where a passenger had been injured : " It (the defendant) owed a duty to the plaintiff to keep both (its cars and track) in a perfect and safe condition for the transportation of passengers with entire safety, so far as human prudence can accomplish these results.    Experience proves, that, when the track and machinery are in this condition, and prudently operated, the trains will keep upon the track, and run thereon with entire safety to those on board."    In other words, the accident in that case was of a character which did not ordinarily occur when a railroad discharged its legal obligation to prevent it.

The relation between a railroad and its employees in the respect in question is very different.    The former is simply required to exercise ordinary, reasonable care and caution to prevent accidents, and, unfortunately, experience has repeatedly so demonstrated that the exercise of this required degree of precaution will not prevent engines and cars and tracks from becoming defective and accidents like the one in question from happening, that no presumption arises from the mere happening of such an accident that the railroad has not discharged its obligation.

The distinction between these two classes of cases was well illustrated in the case of *Loudoun* v. *Eighth Avenue R. R. Co.* (162 N. Y. 380).    In that case a passenger was injured by a collision of the car in which she was riding with a cable car of another independent railway.    It was held, Judge Cullen

writing for the court, that as to the railroad company which was transporting plaintiff as a passenger the accident created a presumption of negligence calling for an explanation and this conclusion was based on the very high degree of care which was required towards a passenger. But it was held on the other hand that as to the line operating the other car under the rule of *res ipsa loquitur* a presumption of negligence did not arise; that said defendant, not being the carrier, was bound only to the exercise of ordinary care in the management of its cars, and that it could not be said " that in the ordinary course of things a car does not collide with vehicles or persons except when there has been carelessness in the management of the car." (P. 386.) (See, also, *Rende* v. *N. Y. & Texas S. S. Co.*, 187 N. Y. 382; *Starrer* v. *Stern*, 100 App. Div. 393; *Moran* v. *Mulligan*, 110 App. Div. 208; *Patton* v. *Texas & Pacific Ry. Co.*, 179 U. S. 658.)

In accordance with these views we think that the order of the Appellate Division must be reversed and that the judgment of the Trial Term dismissing plaintiff's complaint must be affirmed, with costs in both courts.

CULLEN, Ch. J., HAIGHT, WERNER and CHASE, JJ., concur; EDWARD T. BARTLETT and VANN, JJ., dissent.

Order reversed, etc.