## BEAUREGARD v. NEW YORK TUNNEL CO.

(Supreme Court, Appellate Division, Second Department. March 11, 1910.)

1. MASTER AND SERVANT (§ 252*)—INJURIES TO SERVANT—NOTICE OF INJURY.
    A notice served on a master under the employer's liability act, stating that the servant's injury was caused by the insufficiency or defective condition of a certain rope and the master's failure to supply a sufficient rope or implement to do the work, stated merely a common-law liability, and did not extend the liability of the master beyond that imposed by the common law.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

**2. MASTER AND SERVANT (§ 265\*)—INJURIES TO SERVANT—ACTION—BURDEN OF PROOF.**

Under a complaint alleging that a certain rope by means of which an engine hoisted a piece of steel was unsuitable, improper, defective, and unsafe for the purpose for which it was used, the burden was on plaintiff to show that the rope was unsuitable, etc.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 900, 901; Dec. Dig. § 265.\*]

**3. MASTER AND SERVANT (§ 278\*)—INJURIES TO SERVANT.**

In an action for injuries to a servant, evidence *held* insufficient to show negligence on the part of the master in failing to furnish a suitable rope for hoisting purposes.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 958, 961; Dec. Dig. § 278.\*]

**4. MASTER AND SERVANT (§ 182\*)—INJURIES TO SERVANT—LIABILITY OF MASTER.**

Where a servant was injured owing to the starting of a hoisting engine at the direction of his gang boss, the starting of the engine was a detail of the work for which the master was not liable either at common law or under the statute.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 182.\*]

**5. MASTER AND SERVANT (§ 182\*)—INJURIES TO SERVANT—FELLOW SERVANTS.**

Though the act of a gang boss in ordering the starting of a hoisting engine was carelessly and negligently given, the master was not liable therefor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 371; Dec. Dig. § 182.\*]

**6. MASTER AND SERVANT (§ 252\*)—INJURIES TO SERVANT—NOTICE OF INJURY.**

In an action for injuries to a servant, plaintiff could not claim negligence on the part of his gang boss as defendant's representative, where he gave no notice of such claim, and did not allege it in his complaint.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.\*]

**7. MASTER AND SERVANT (§ 182\*)—INJURIES TO SERVANT—LIABILITY OF MASTER.**

At common law a master is not liable for the acts of his foreman in giving an improper order, and under the statute no liability exists for an order given as a mere detail of the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.\*]

**8. MASTER AND SERVANT (§ 182\*)—INJURIES TO SERVANT—MASTER'S LIABILITY.**

Where a master furnished a steel cable for hoisting purposes, and also a rope, the master was not liable for injuries to a servant arising from the breaking of the rope which was used under direction of plaintiff's gang foreman; such selection being the act of a fellow workman, and a mere detail of the work.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 182.\*]

Hirschberg, P. J., dissenting.

Appeal from Trial Term, Kings County.

Action by Joseph A. Beauregard against the New York Tunnel Company. Appeal by plaintiff from a judgment dismissing his complaint. Affirmed.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ.

James P. Niemann, for appellant.

Franklin Nevius (John S. Keith, on the brief), for respondent.

RICH, J.   The defendant was engaged in the construction of a subway under the East River.   The plaintiff was one of its employés.   A shield was being constructed in the tunnel, composed of several pieces of steel, one of which—the cutting edge or hood—weighing 1,372 pounds, was being raised and put in place when the plaintiff went to work at about 11 o'clock in the evening on the day of the accident.   It was being raised by a manilla rope, $1\frac{1}{4}$ or $1\frac{1}{2}$ inches in diameter, attached to the winch or niggerhead of the engine.   The edge of this piece of steel caught in an angle iron, and the gang boss, Thompson, directed the plaintiff and another employé to take a bar and pry it away so they could raise it.   While the plaintiff was so engaged, Thompson directed the hoisting engineer to go ahead, the engine was started, and shortly thereafter the rope broke, and the hood fell upon the plaintiff, inflicting the injuries complained of.

The complaint alleges negligence in one particular only, viz.:

"That the manilla rope cable by means of which an engine hoisted said cutting edge or hood into position was unsuitable, improper, defective, and unsafe for the purpose for which it was used, to wit, to hoist and hold suspended said cutting edge or hood."

A notice was served upon the defendant, under the provisions of the employer's liability act (Consol. Laws, c. 31), which states:

"That said injury was caused by reason of the insufficiency or defective condition of said rope and the failure of your company to supply and furnish a sufficient and proper rope, implement or means with which to do said work."

This notice states nothing further than a common-law liability, and did not operate to extend the liability of the defendant beyond that imposed upon it by the common law, and the questions presented must be determined under the common law.   Barry v. Derby Desk Co., 121 App. Div. 810, 106 N. Y. Supp. 575.

Under the allegations of the complaint, the burden was upon the plaintiff to establish that the rope used for hoisting the hood was "unsuitable, improper, defective, and unsafe" for the purpose for which it was being used, and whether or not such burden had been sustained, and a prima facie case established, entitling the plaintiff to go to the jury, is the crucial question requiring our consideration.   I concur with the learned trial justice in his conclusion that the plaintiff, when he rested his case, had failed to establish the negligence alleged, from which it follows that the complaint was properly dismissed.

The rope in use ran four times through pulleys or blocks above the hood being raised, and broke between the pulleys and the engine.   It was a new rope, which had been in use not to exceed a month in pulling materials into the tunnel.   The only two of the plaintiff's witnesses who examined it after the accident, McElroy and Walter, testified that it looked "fairly like a new rope."   There was no evidence that the rope

was unsuitable or improper for the use to which it was being put at the time of the accident; and the only evidence that it was defective was given by an expert called by the plaintiff, who in answer to a hypothetical question, which did not assume all of the facts proven, gave it as his opinion that the rope was defective. The hypothetical question asked did not include the facts as proven that the engine was not running when the rope broke, and that the witnesses who examined the rope after the accident testified that it "looked fairly like a new rope." On the attention of the expert being directed to these facts, and in answer to the question whether if they had been included in the facts assumed his answer to the hypothetical question would have been the same, he said it would have changed his testimony, and his answer would not have been the same. Upon his cross-examination this witness testified that the average breaking weight of a fairly new 1½ inch manilla rope was 18,000 pounds, and of a 1¼ inch rope was 14,000 pounds; that in raising a weight of 1,372 pounds, which the witness figured was the weight of the piece of steel which fell on the plaintiff, from the dimensions given him as testified to by the witnesses, with two pairs of pulleys, rigged as were the ones in use when the accident happened, the strain on the rope between the pulleys and the motive power, where the rope broke, would be, allowing for friction, 411 pounds, or $1/46$ of the breaking strain of a fairly new 1½ inch manilla rope, and $1/34$ of a fairly new 1¼ inch manilla rope. He also testified that a rope which had been wet and used in that condition for a few months would weaken from 20 per cent. minimum to 50 per cent. maximum, and that, allowing a weakening in the rope which broke of 50 per cent., the strain between the pulleys and the niggerhead of the engine would be only $1/23$ of the breaking strain of a 1¼ inch manilla rope. This evidence does not tend to establish negligence of the defendant or its employés in the use of the rope, and fails to sustain the allegation that the rope was defective or unsafe. Upon the contrary, it establishes the safety of the rope for the purpose for which it was being used at the time of the accident, under ordinary conditions, and it seems apparent that its breaking was the result of excessive strain put upon it by the power of the engine pulling against the hood which was caught and held by an angle iron. The starting of the engine was a detail of the work, for which the defendant could not be held liable either at common law or under the statute. Nappa v. Erie R. R Co., 195 N. Y. 176, 88 N. E. 30, 21 L. R. A. (N. S.) 96; Vogel v. American Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725. Assuming that Thompson's order to start the engine was carelessly and negligently given, the defendant is not chargeable with such negligence, for the evidence shows Thompson to have been a gang foreman, for whose negligence the master was not liable. Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905. The plaintiff is not in a position to claim negligence on the part of Thompson as the defendant's alter ego, as he has given no notice to the defendant of such a claim, nor has he alleged it as the cause of his injury. Neither can he claim that the order to pry the hood loose from the angle iron with which it was caught made the defendant liable for the result of such order, assuming it to have been negligent; for at common law the employer is not liable for the acts

of his foreman in giving an improper order, and, under the statute, no liability exists for an order given as a mere detail of the work. Vogel v. American Bridge Co., supra; Nappa v. Erie R. R. Co., supra; Tweed v. Hudson River Telephone Co., 130 App. Div. 231, 114 N. Y. Supp. 607; Webber v. Piper, 109 N. Y. 496, 17 N. E. 216; Pluckham v. Am. Bridge Co., 104 App. Div. 404, 93 N. Y. Supp. 748; Connolly v. Hall & Grant Con. Co., 117 App. Div. 387, 102 N. Y. Supp. 599. The doctrine of res ipsa loquitur has no application to the facts. Henson v. Lehigh Valley R. R. Co., 194 N. Y. 205, 87 N. E. 85, 19 L. R. A. (N. S.) 790; Ferrick v. Eidlitz, 195 N. Y. 248, 88 N. E. 33; Eaton v. N. Y. C. & H. R. R. R. Co., 195 N. Y. 267, 88 N. E. 378. Even were it conceded that the rope was not sufficient, that fact would not sustain the plaintiff's right to recover, as the evidence is uncontradicted that there was a steel cable furnished by the defendant for hoisting purposes, which had been so used, and on the night of the accident was coiled on the drum attached to the engine, and, so far as the evidence shows, it was in perfect condition and could have been used for raising the hood, and the defendant, having furnished both the steel cable and the rope for the use of its employés, had discharged its common-law obligation to the plaintiff, and was not liable because its gang foreman failed to use the steel cable. Vogel v. Am. Bridge Co., supra. Such selection was the act of a fellow workman, and a mere detail of the work. Nappa v. Erie R. R. Co., supra.

The judgment must be affirmed, with costs. All concur, except HIRSCHBERG, P. J., who dissents.