KIMBALL v. O'DELL & EDDY CO.

(Supreme Court, Appellate Division, Fourth Department.   May 4, 1910.)

1. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—NEGLIGENCE—EVI-
   DENCE.
      In an action for injuries to a servant caused by the bursting of a wood-
   en drive wheel on an engine caused by sudden increased speed, evidence
   *held* insufficient to show that the increase was caused by the turning of
   the pulley on the governor shaft of the engine, resulting from a loosening
   of the set screw by which the pulley was held to the shaft.
      [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 276.*]

2. EVIDENCE (§ 87*)—FAILURE TO CALL WITNESS—PRESUMPTION—EFFECT.
      While defendant's failure to call a supposedly friendly witness might
   be considered by the jury as raising an inference adverse to defendant in
   arriving at the verdict, they would not be entitled to treat such failure
   as direct evidence proving of itself the crucial fact of negligence in issue.
      [Ed. Note.—For other cases, see Evidence, Dec. Dig. § 87.*]

Appeal from Trial Term, Erie County.

Action by Elmer D. Kimball against the O'Dell & Eddy Company.
From the judgment for plaintiff on a verdict for $2,246 and from an
order denying defendant's motion to set aside the verdict on the min-
utes, it appeals.   Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

Clinton B. Gibbs, for appellant.
Eugene W. Harrington, for respondent.

ROBSON, J.   Upon the review in this court of a former trial of
this action plaintiff's judgment against defendant was reversed, be-
cause, as it was then held, plaintiff had failed to establish that his
injury was due to defendant's negligence.   Kimball v. O'Dell & Eddy
Co., 131 App. Div. 542, 115 N. Y. Supp. 319.

Plaintiff was employed by defendant as a fireman, whose duties
also included running an engine in its factory.   While so engaged the
speed of the engine in his charge suddenly increased to a degree caus-
ing the wooden drive wheel, or pulley, attached to the main shaft of
the engine, to burst; and a flying piece of it struck and broke plain-
tiff's leg.   It seems to be conceded that this dangerous increase of
the engine's speed was due to the fact that for some reason an ap-
pliance, called the governor, attached to the engine, failed to perform
its function in regulating the feed of steam to the steam chest of the
engine.   A belt, passing from a small pulley on the main shaft of the
engine up over another pulley on the governor shaft, supplied the
power by which the governor was operated.   It is not claimed that the
governor itself was defective.   It did not work, because the belt and
pulleys for some reason suddenly ceased to supply the power neces-
sary to run it.   On the former trial plaintiff's claim was that this fail-
ure was due to the fact that the set screw, which should have held
the lower pulley rigidly attached to the main shaft was loose, permit-
ting the shaft to revolve in the hub of the pulley, instead of turning

the pulley with it, and that defendant was negligent in not discovering and remedying this condition. On appeal to this court it was held that the evidence failed to show either that the set screw was loose, or, even if it was, that its looseness could have been discovered by a reasonable inspection before the accident. Plaintiff's claim on this trial was that the set screw on the upper pulley, the one attached to the governor shaft, was loose, and, as a result, that pulley failed to turn the governor shaft. If either pulley was loose, it is clear the governor would not work. It also appears that the belt might fail to give power to operate the governor, if it slipped on the lower pulley, or for any reason had slipped off it. It is not unusual for either of these things to happen. If the lower pulley was loose on its shaft, or if the belt slipped on it, or was not in fact on it, it is apparent that the belt would as the witnesses express it stand still. On the other hand, if the upper pulley was loose on its shaft, the belt would move as usual with the revolution of the lower pulley, and revolve the upper pulley on its shaft, but not the shaft itself. It became, therefore, one of the crucial points of the case to determine whether the belt was at the time of the accident standing still. The jury were specifically instructed in the main charge of the court, and again at defendant's request, that, unless they were satisfied by a fair preponderance of the evidence that the governor belt was not standing still, their verdict must be for the defendant. Under this instruction plaintiff's verdict shows that the jury must have found that the evidence proves that the belt was not standing still. It seems to us that the evidence does not sufficiently establish this fact. Plaintiff is the only witness who testifies to having observed the belt at that time. As appears in the present record, he testified on the former trial distinctly that the belt was standing still. On the present trial his statement is that just prior to the accident he looked over his shoulder and "saw the belt was standing still, at least it looked that way." This statement he repeats in effect on cross-examination, and on further examination adds this statement:

"When I saw the belt standing still, I jumped to the throttle. When I saw the belt standing still, I was perhaps three or four feet away."

The only other witness produced on the trial who appears to have been in a position to see whether the belt was moving or not says:

"I didn't observe whether the pulley belt was running or not. The belt would have to run if the engine was running. The set screw being out of the upper shaft would not affect the running of the belt."

The only evidentiary fact embodied in this statement is that the witness did not look at the belt, and therefore was unable to say whether it was moving or not. His further statement that it must have been running, if the engine was, is an inference only that the belt must have been running, if the lower pulley was making it run. This witness also swears that on examining the engine some 10 or 15 minutes after the accident he found the set screw gone from the upper pulley. There is no evidence, however, as to how long it had been gone, or that it had been loose prior to the accident, and no direct evidence even that the pulley was loose on its shaft. It may be suggested that, as the set screw was out so shortly after the accident, that fact would

warrant an inference that the pulley was loose just before the accident occurred; and from that inference of fact the jury may have drawn the further inference that the belt was still running on both pulleys. But this eliminates as possible causes of the accident the apparently equally probable suggestion that the belt may have been standing still because it was either slipping on the lower pulley or had slipped off the pulley entirely. Neither of these possibilities is eliminated by the evidence, unless it be proved as a fact that the belt was running, and this cannot be properly proved by basing it as an inference upon a precedent possible inference such as has already been suggested. Henson v. Lehigh Valley R. R. Co., 194 N. Y. 205, 210, 87 N. E. 85, 19 L. R. A. (N. S.) 790. It also appears that defendant's foreman, Hutchinson, came upon the scene immediately after the accident, and while the engine was still running. He appears to have remained in defendant's service, but was not called as a witness in its behalf. Defendant's failure to call this supposedly friendly witness might well as the jury were instructed be considered by them in arriving at their verdict. But they could not properly treat it as in and of itself direct evidence proving the crucial fact that the belt was running. Schwier v. N. Y. C. & H. R. R. Co., 90 N. Y. 558, 564. All of the evidence as to whether the belt was or was not running has now, as we believe, been referred to, and we conclude that under the instructions of the court to which we have referred the verdict of the jury was contrary to and against the weight of the evidence.

The judgment and order must therefore be reversed, and a new trial granted, with costs to appellant to abide event. All concur.